IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LISA LEE-BOLTON and RICHARD      )
BOLTON, on behalf of themselves and  )
all others similarly situated, and ROY  )
GEIERSBACH on behalf of himself,   )
                                   )
                    Plaintiffs,    )
                                   )
        v.                         )        Case No:  1:10-cv-00253-SPM-GRJ
                                   )
KOPPERS INC., f/k/a KOPPERS       )
INDUSTRIES, INC., BEAZER EAST,    )
INC., f/k/a KOPPERS COMPANY,       )
INC., KOPPERS HOLDINGS, INC.,     )
HEIDELBERG CEMENT AG,            )
MCCLELLAN LOGGING, INC., and     )
UNNAMED TRUCKING COMPANIES,     )
                                   )
                    Defendants.    )
_____  )

## DEFENDANT MCCLELLAN LOGGING, INC's. MOTION TO DISMISS COUNTS III, V, VIII AND X OF PLAINTIFFS' CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

COMES   NOW   the   Defendant   MCCLELLAN   LOGGING,   INC.

("MCCLELLAN"), by and through its undersigned counsel, and respectfully motions this

Court   pursuant   to   Fed.R.Civ.P.   12(b)(6)   to   dismiss   Plaintiffs'   claims   as   to

MCCLELLAN, which claims allege a violation of Florida's Water Quality Assurance

Act (Count III), negligence and negligence per se (Count V), trespass (Count VIII) and

nuisance (Count X).  As grounds in support thereof, MCCLELLAN states as follows:

## A.     <u>INTRODUCTION AND SUMMARY</u>

Defendant MCCLELLAN is a family-owned Florida corporation that sold, transported and delivered untreated logs to the Koppers Site before the site closed in 2009. (Complaint, ¶ 25)

In this putative class action, a group of purported property owners in Gainesville, Florida attempt to assert claims against MCCLELLAN for violation of Florida's Water Quality Assurance Act ("WQAA"), negligence, negligence <u>per se</u>, trespass and nuisance based on the alleged "stirring up" of toxic dust when MCCLELLAN delivered untreated logs to a commercial wood treatment operation conducted by co-Defendant Koppers, Inc. at a Superfund site ("the Site").   It is common knowledge that the Site has been monitored and regulated by the U.S. Environmental Protection Agency for decades. Plaintiffs seek damages for diminished property value, loss of use and enjoyment of property, stigma and increased risk of adverse health effects.   (Complaint, ¶ 38.) Plaintiffs have named several defendants who owned and operated a portion of the Site at different times such as Koppers, Inc. and Beazer East, Inc.; however, in paragraph 3 of Plaintiffs' Complaint, <u>Plaintiffs specifically exclude MCCLELLAN from having any</u> <u>"legal, managerial, operational, ownership, financial and/or controlling relationship with,</u> <u>interest in, responsibility for, and/or involvement with the Koppers Site and/or operations</u> <u>at the Koppers Site</u>" (emphasis supplied).

On their face, Counts III, V, VIII and X of the Complaint are insufficiently pled and violate Fed.R.Civ.P. 9(f) because they do not allege or indicate when MCCLELLAN's purported acts and/or omissions took place; therefore, Counts III, V, VIII and X must be dismissed.  Furthermore, Plaintiffs' claim that MCCLELLAN has violated the Water Quality Assurance Act, §376.40, et. seq., Fla. Stat., should be dismissed because Plaintiffs have not sufficiently alleged that MCCLELLAN carried out any of the acts prohibited under the WQAA.  Plaintiffs' allegations of negligence must also fail because MCCLELLAN has no legally recognizable duty to Plaintiffs under Florida law.  Plaintiffs' purported negligence per se claim fails because plaintiffs allege, in a conclusory fashion, violations of statutes that are designed to protect the general public instead of a particular class of people.  Plaintiffs' purported trespass claim fails because Plaintiffs have not sufficiently alleged all elements required for a cause of action for trespass.  Finally, Plaintiffs' purported nuisance claim fails because Plaintiffs have failed to sufficiently plead a cause of action sounding in nuisance or a claim upon which relief can be granted.

**B.     COUNTS III, V, VIII AND X AGAINST MCCLELLAN DO NOT MEET THE APPLICABLE FEDERAL PLEADING STANDARD**

Counts III, V, VIII and X fail to state a cause of action and must be dismissed because the Complaint is silent as to any date or dates relative to when MCCLELLAN's purported acts or omissions occurred.  The failure to provide dates when MCCLELLAN purportedly committed its alleged acts or omission is fatal to all of Plaintiffs' counts

against this Defendant.  As set forth in Fed.R.Civ.P. 9(f), "[a]n allegation of time … is material when testing the sufficiency of a pleading."

As will be described more fully herein, Counts III, V, VIII and X also fail to meet the Twombly and Iqbal tests. Prior to the United States Supreme Court's decisions in Twombly and Iqbal, a complaint could not be dismissed for failure to state a claim "unless it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Twombly "retired" Conley's "no set of facts test" and emphasized that the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In other words, the plaintiff must provide sufficient factually allegations to "state a claim to relief that is plausible on its face."  Id. at 570.

In Iqbal, the Court re-emphasized that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (emphasis added).  Complaints must have "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Only where "there are well-pleaded factual allegations, a court could assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.  The

Eleventh Circuit has squarely embraced the Twombly pleading standard. See, e.g. Watts v. Florida International University, 495 F.3d 1289, 1296 (11th Cir. 2007).

Plaintiffs in this action have the burden to provide the required sufficiency for the court to conclude that the plaintiff's allegations have a real basis to proceed. North American Clearing House v. Brokerage Computer Systems, Inc., 2009 WL 1513389 (M.D. Fla. 2009). Plaintiffs have not met this burden. As the court noted in North American Clearing House, "[o]n a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the more likely explanations involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible." Id. at *4 (internal citations and quotations omitted).

## C.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MCCLELLAN FOR VIOLATION OF THE WATER QUALITY ASSURANCE ACT, §376.30, ET SEQ., FLA. STAT. IN COUNT III

Count III of Plaintiffs' Complaint alleges a claim against MCCLELLAN for purported violation of the Water Quality Assurance Act, §376.30, et seq., Fla. Stat. In Count III, Plaintiffs generally assert that MCCLELLAN has "caused discharge of hazardous substances into the Site and the surrounding properties, and [has] caused discharge of hazardous substances into or upon the surface or ground waters of the State of Florida, and upon the lands of the State of Florida, specifically, the land of the Site and the groundwater beneath it, as well as the land surrounding the site and the groundwater

beneath it." (Complaint, ¶ 71.) Plaintiffs also assert damages resulting from such alleged discharge.

Plaintiffs fail to state a cause of action against MCCLELLAN under the WQAA. Section 376.313 of the WQAA, entitled "Nonexclusiveness of remedies and individual cause of action for damages under ss. 376.30-376.317," provides that "nothing contained in ss. 376.30-376.317 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.317." While §376.313 might identify the existence of a general right to bring an individual cause of action under the WQAA, the particular prohibited acts that would give rise to such a cause of action are limited to those identified in §376.302 (titled "Prohibited acts; penalties"), which provides as follows in pertinent part:

> **376.302.  Prohibited acts; penalties**
>
> (1)     It shall be a violation of this chapter and it shall be prohibited for any reason:
>
> > (a)     To discharge pollutants or hazardous substances into or upon the surface or ground waters of the state or lands, which discharge violates any departmental "standard" as defined in s. 403.803(13)[1].

---

[1]      The term "standard" is defined under §403.803(13), Fla. Stat., as "any rule of the Department of Environmental Protection relating to air and water quality, noise, solid-waste management, and electric and magnetic fields associated with electrical transmission and distribution lines and substation facilities. The term 'standard' does not include rules of the department which relate exclusively to the internal management of the department, the procedural processing of applications, the administration of rulemaking or adjudicatory proceedings, the publication of notices, the conduct of hearings, or other procedural matters."

  (b)  To fail to obtain any permit or registration by this chapter or by rule, or to violate or fail to comply with any statute, rule, order, permit, registration, or certification adopted or issued by the department pursuant to its lawful authority.

  (c)  To knowingly make any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter, or to falsify, tamper with, or knowingly render inaccurate any monitoring device or method required to be maintained under this chapter or by any permit, registration, rule, or order issued under this chapter.

     ***

Other than the prohibited acts set forth above in §376.302, no other prohibited acts are specified within the WQAA which would provide a basis for an individual cause of action; thus, pursuant to the plain language of the WQAA and with respect to §§376.302 and 376.313 in particular, <u>any individual cause of action brought against a party for a purported violation of the Act must allege that the defendant conducted one of the prohibited acts identified in §376.302(1)(a)-(c)</u>.

   In the instant case, Plaintiffs have failed to allege that MCCLELLAN conducted any of the prohibited acts identified within §376.302(1)(a)-(c). First, while the Complaint alleges that MCCLELLAN's trucks "stirred up significant quantities of dust containing toxic chemicals" which purportedly settled in and around Plaintiffs' property (Complaint, ¶ 25), Plaintiffs fail to assert any <u>factual allegations</u> (versus mere conclusory statements) that would suggest a relationship between any dust purportedly "stirred up" by MCCLELLAN and the discharge of any pollutants or hazardous substances into or

upon surface or ground waters, as is specifically required for any proper cause of action

brought in relation to §376.302(1)(a) of the WQAA.   Section 376.30 of the WQAA

unambiguously sets forth the Florida Legislature's purpose in enacting the WQAA as

legislation to protect surface and ground waters and provides that "the preservation of

surface and ground waters is a matter of the highest urgency and priority, as these waters

provide the primary source for potable water in this state."[2]   See also Curd v. Mosaic

Fertilizer, LLC, 39 So.3d 1216. 1220, n.1 (Fla. 2010) (finding that the WQAA provides

for individual causes of action for pollution of surface and ground waters, specifically).

Because dust which settles in and around land has no relevance to the language of the

WQAA or the legislature's intent for the statute, and because Plaintiffs' factual

allegations regarding the instant suit are limited to alleged effects of "stirred up" dust on

land, rather than on surface or ground water, Plaintiffs have failed to state a sufficient

cause of action against MCCLELLAN in Count III with respect to §376.302(1)(a) of the

WQAA.

Plaintiffs have also failed to state a cause of action in Count III with respect to

§376.302(1)(a) of the Act because this count fails to assert a violation of any

departmental "standard" of the Department of Environmental Protection ("DEP") as

defined in §403.803(13).  As illustrated in the case of The St. Joe Company v. Leslie, 912

---

[2]      It is well-settled law in Florida that where the language of a statute clearly and unambiguously
conveys legislative intent, it is unnecessary to resort to statutory construction; and, additionally, courts
should not depart from the plain language employed by the legislature.  Seaboard System Railroad, Inc. v.
Clemente, 467 So.2d 348 (Fla. 3d DCA 1985).

So.2d 21, 25 (Fla.1st DCA 2005), a plaintiff who attempts to assert a cause of action under the WQAA in relation to §376.313(1)(a) will not prevail if a prohibited discharge or other pollutive condition does not exceed DEP's standards; consequently, because Count III against MCCLELLAN fails to allege any violation of any particular DEP standard, Plaintiffs have further failed to set forth a proper cause of action with respect to §376.302(1)(a) of the WQAA.

Looking to §376.302(1)(b) of the WQAA, Plaintiffs have also not alleged in Count III that MCCLELLAN failed to obtain any permit or registration required under the Act or under any rule, nor have Plaintiffs alleged that MCCLELLAN violated or failed to comply with any statute, rule, order, permit, registration, or certification adopted or issued by DEP; therefore, no proper cause of action has been asserted against MCCLELLAN by Plaintiffs with respect to §376.302(1)(b).

Finally, with respect to §376.302(1)(c), Plaintiffs have failed to allege in Count III that MCCLELLAN knowingly made any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under the WQAA. Plaintiffs have also failed to allege that MCCLELLAN falsified, tampered with, or knowingly rendered inaccurate any monitoring device or method required to be maintained under the Act or by any permit, registration, rule, or order issued under the Act; therefore, no cause of action has been asserted against MCCLELLAN by Plaintiffs with respect to §376.302(1)(c) in Count III.

In sum, Count III fails to allege the required elements for satisfying any of the grounds for suit as set forth in §376.302(1)(a)-(c) of the WQAA.  Because Plaintiffs fail to allege any cause of action against MCCLELLAN for alleged violation of the WQAA, this Court should dismiss Count III of the Complaint as to MCCLELLAN.

**D.   PLAINTIFFS' COUNT V FAILS TO STATE A CLAIM FOR NEGLIGENCE OR NEGLIGENCE PER SE**

To allege a cause of action for negligence, Plaintiff must allege the following elements as set forth in <u>Curd v. Mosaic Fertilizer</u>, 39 So.2d 1216, 1227 (Fla. 2010):

\*\*\*

1.    A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2.    A failure on the [defendant's] part to conform to the standard required:  a breach of the duty …

3.    A reasonably close casual connection between the conduct and the resulting injury.  This is what is commonly known as "legal cause," or "proximate cause," and which includes the notice of cause in fact.

4.    Actual loss or damage …

<u>Clay Elec. Coop., Inc. v. Johnson</u>, 873 So.2d 1182, 1185 (Fla. 2003) (alterations in original) (quoting *Prosser and Keaton on the Law of Torts* 164-65 (W. Page Keeton ed., 5th ed. 1984)).

\*\*\*

Whether a duty exists on the part of a particular defendant is a question of law for the court.  <u>Williams v. Davis</u>, 974 So.2d 1052 (Fla. 2007).  In Florida, a "legal duty" constitutes an allocation of risk determined by the foreseeability of the harm in light of all the circumstances against the burden to be imposed.  <u>Biglen v. Florida Power & Light</u>

Co., 910 So.2d 405 (Fla. 4th DCA 2005), citing to and quoting Vaughan v. Easter Edison

Co., 48 Mass.App.Ct. 225, 719 N.E. 2d 520, 523 (1999).

In the instant action, Plaintiffs have failed to articulate a duty recognizable under

Florida law on the part of MCCLELLAN to avoid "the escape of toxic dust" it and others

"stirred up" (Complaint, ¶ 85) when it dropped off untreated logs at the Site as part of a

routine job.  MCCLELLAN is also alleged to have negligently failed "to prevent the

release and spread of toxic dust" to avoid contamination" of Plaintiffs' property.

(Complaint, ¶ 85)  In the instant case, MCCLELLAN did not own, operate or manage the

Site.  Additionally, Plaintiffs fail to allege that MCCLELLAN created the "toxic dust" or

that MCCLELLAN's activities were conducted in an unreasonable manner, unlawfully or

created a zone of risk which obligated MCCLELLAN to protect the Plaintiffs from some

sort of foreseeable and appreciable harm.[3]

Plaintiffs acknowledge that MCCLELLAN sold, transported and delivered

untreated logs to the Site.  (Complaint, ¶ 25)  MCCLELLAN is not alleged to have

treated the logs with any chemicals.  MCCLELLAN cannot and should not be responsible

for a condition purportedly occurring at the Site when it did not create the alleged toxic

environment, and it did not own or operate the Site or chemically treat the logs it

delivered.  Even if Plaintiffs were able to maintain a claim against MCCLELLAN for a

---

[3]     MCCLELLAN realleges its argument regarding its grounds for dismissal of Count III.  Count V's
negligence allegations are premised on the purported" release and spread of toxic dust" or hazardous
substances; therefore,  if Plaintiffs are unable to maintain a cause of action against MCCLELLAN for
violation of the WQAA, then no negligent "stirring up of toxic dust" can be sufficiently pled.

violation of the WQAA, it cannot reasonably be argued that MCCLELLAN's activities of delivering untreated logs and purportedly "kicking up" what the Plaintiffs describe as "toxic dust" proximately placed Plaintiffs' alleged interests directly within a zone of risk ostensibly created by MCCLELLAN.   To take Plaintiffs' negligence argument against MCCLELLAN to its logical extreme would necessitate Plaintiffs suing every vehicle, truck and motorcycle that routinely "frequented" or delivered goods to the Site and "stirred up" some amount of "toxic dust."  Why have the Plaintiffs not sued those persons or entities that frequented the Site in the ordinary scope and course of business and/or delivered the alleged toxins to the Site?  Why should MCCLELLAN have to bear the burden of liability for "stirring up" an unknown and unquantifiable amount of dust that by its very definition is a fine particle of matter whose dispersal is based on an innumerable set of factors such as the presence of wind; wind speed; and rain or the absence thereof.[4]

In Count V, Plaintiffs have cited to no scientific or industry standard or specific standard recognized at law that MCCLELLAN has breached or violated.   Again, Plaintiffs somehow omit and/or fail to allege an "unlawful" amount of "toxic dust" that MCCLELLAN "stirred up" such that it constitutes a foreseeable event so as to create a duty to Plaintiffs recognizable by law.  Florida law recognizes that where a plaintiff's

---

[4]      As set forth in the Notice of Removal filed in this case, the inclusion of MCCLELLAN is an obvious attempt by the Plaintiffs to defeat diversity, and MCCLELLAN adopts the arguments of fraudulent joinder as set forth in the Notice of Removal (Doc. 1) filed in this case.

barebones allegations simply do not rise to the level of creating a generalized and foreseeable risk of harming the plaintiff, no duty of care is created.  See <u>National Title Ins. Co. v. Lakeshore I Condominium Assoc., Inc.</u>, 691 So.2d 1104, 1106 (Fla. 3d DCA 1997).

Plaintiffs' negligence <u>per se</u> claim – alleged in a single paragraph with Plaintiffs' negligence claim – relies on unspecified violations of the WQAA and Air and Water Pollution Act ("AWPA") (Complaint, ¶ 82).  Plaintiffs cannot rely on these statutes to support their claim of negligence <u>per se</u>.  The WQAA and AWPA are designed to protect the environment and general public in the State of Florida and not a particular class of people of which Plaintiffs claim to be members.

In Florida, a statutory violation constitutes negligence <u>per se</u> in only two limited circumstances:  (1) if the statute is designed to protect a particular class of persons who are unable to protect themselves; or (2) if the statute establishes a duty to take precautions to protect a particular class of persons from a particular type of harm.  <u>deJesus v. Seaboard Coast Line R.R. Co.</u>, 281 So.2d 198, 201 (Fla. 1973).  Any other alleged statutory violation constitutes mere evidence of negligence.  <u>Id.</u>  Accordingly, when a plaintiff alleges that the defendant violated a statute designed to protect the general public, rather than a particular class of people, he cannot maintain a claim for negligence <u>per se</u> based on that violation.  <u>See e.g.</u>, <u>Chevron USA, Inc. v. Forbes</u>, 783 So.2d 1215, 1219-20 (Fla. 4th DCA 2001).

Despite Plaintiffs' unsupported allegations to the contrary, the WQAA and AWPA are not designed to protect a particular class of people; rather, these statutes are designed to protect the general public.  The WQAA seeks to preserve surface and ground waters in the State of Florida.  When it enacted the WQAA, the Florida legislature declared that "[s]pills, discharges and escapes of pollutants … and hazardous substances … pose threats of great danger and damage to the environment of the state, to citizens of the state, and to other interests deriving livelihood from the state." §376.30(2)(b)(2010), Fla. Stat. (emphasis supplied).  When it enacted the AWPA, the Florida Legislature similarly declared that "pollution of the air and waters of this state constitutes a menace to public health and welfare" and specifically stated "the provisions of this act are enacted in the exercise of the police powers of this state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state." §403.021(1), (5), Fla. Stat. (emphasis supplied).[5]

Because the WQAA and AWPA are designed to protect the general public and not the plaintiffs specifically, Plaintiffs cannot rely on alleged violations of those statutes to state a claim for negligence per se.  The Court should dismiss plaintiffs' negligence per se claim as set forth in Count V with prejudice.

---

[5]     MCCLELLAN would point out that Plaintiffs fail to specifically allege how it allegedly violated the AWPA in Count V.

**E.** **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MCCLELLAN FOR TRESPASS IN COUNT VIII**

Plaintiffs have failed to state a sufficient cause of action for alleged trespass in Count VIII because such count is limited to alleging mere conclusory statements and/or legal conclusions and does not assert sufficient factual allegations to survive this motion to dismiss.

Under Florida law, a trespass to real property is defined as an injury to or a use of the land of another by one who has no right or authority. Glen v. Club Mediterranee, S.A., 450 F.3d 1251, 1254 (11th Cir. (Fla.) 2006. A claim for trespass must specifically include the following allegations: (1) ownership or possession of the land in question; (2) sufficient description of the land in question, (3) an unpermitted entry onto the land or remaining on the land after consent has been withdrawn, and (4) damages. Brown v. Solary, 37 Fla. 102, 112 (1896); Guin v. City of Riviera Beach, 388 So.2d 604 (Fla. 4th DCA 1980). Relative to the first allegation which is required for a claim for trespass to be actionable (that the aggrieved party had ownership or possession of the land in question), Florida case law further requires that a Complaint must assert that such ownership or possession occurred at the time of the trespass. Pitts Sales, Inc. v. King World Productions, Inc., 383 F.Supp.2d 1354, 1364-1365 (S.D. Fla. 2005); Winselmann v. Reynolds, 690 So.2d 1325, 1327 (Fla. 3d DCA 1997).

As previously discussed above, to survive a motion to dismiss, a cause of action must allege more than just mere conclusory statements or legal conclusions; a claim must

be more fact-specific, setting forth factual content that would allow the court to draw a reasonable inference that the defendant party is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

In the instant case, Plaintiffs' trespass claim does not include sufficient factual content to set forth a proper cause of action upon which relief can be granted. Nowhere in the Complaint is it alleged that Plaintiffs owned or possessed the subject properties at the time the alleged trespass occurred; instead, the Complaint merely alleges that Plaintiffs "own homes and real property within the Affected Areas" at the present time. Because Plaintiffs have not alleged ownership and possession at the time of the alleged trespass by MCCLELLAN, Plaintiffs have failed to allege all elements required to assert a cause of action for trespass, and Count VIII must be dismissed.

In addition to failing to assert any allegation of ownership or possession of the subject properties at the time the alleged trespass occurred, the Complaint also fails to provide sufficient factual allegations that MCCLELLAN carried out "an unpermitted entry onto land," which legal element is required for a cause of action for trespass to exist. As previously noted, the Complaint does not set forth any date or dates as to when the alleged unpermitted entry of "hazardous substances" by MCCLELLAN purportedly occurred in violation of Fed.R.Civ.P. 9(f). Also, referring once again to MCCLELLAN's arguments regarding Count III, Plaintiffs' allegations of trespass against MCCLELLAN fail to provide factual allegations regarding the unlawful amount of the hazardous

substances which purportedly entered Plaintiffs' properties in violation of the WQAA, or the number or length of any and all purported occurrences of trespass. Thus, because the required legal element of "an unpermitted entry upon land" has not been alleged through sufficient factual content, Plaintiffs have failed to state a cause of action against MCCLELLAN for trespass upon which relief can be granted, and Count VIII must be dismissed.

Florida case law provides that a claim for trespass related to the movement of debris onto an aggrieved party's property (such as the dust complained about in the instant case) may be dismissed for failure to state a cause of action. For instance, in the case of <u>Corbett v. Eastern Air Lines, Inc.</u>, 166 So.2d 196, 200, 204 (Fla. 1st DCA 1964), the First District Court of Appeals upheld the trial court's decision to dismiss the plaintiffs' claim for, <u>inter alia</u>, trespass, where the plaintiffs' trespass claim alleged that the defendant airlines had propelled and directed streams of air, fuel vapor, stones, sand, gravel and other debris against and over plaintiffs' property and grounds. Agreeing with the trial court that the plaintiffs had failed to state a cause of action in their proposed Amended Complaint for a claim of trespass involving the movement of particulate-type debris onto the plaintiffs' property, the appellate court held that a "cognizable" cause of action sounding in trespass could not be sustained. <u>Id.</u> at 204.

Because Plaintiffs have failed to state a proper cause of action against MCCLELLAN for alleged trespass, the Court should dismiss Count VIII of the Complaint as to MCCLELLAN.

Finally, in Florida, a "recovery in trespass is always based on a wrongful invasion of the plaintiff's rights." Elowsky v. Gulf Power Co., 172 So.2d 643, 645 (Fla. 1st DCA 1965). Plaintiffs have failed to allege sufficient factual allegations in their Complaint to demonstrate that MCCLELLAN has violated the WQAA; consequently, Plaintiffs' "trespass" allegations as set forth in VIII must fail because Plaintiffs cannot show any unlawful activity, transgression or offense on the part of MCCLELLAN resulting in a trespass.

## F.     PLAINTIFFS FAIL TO STATE A CLAIM FOR NUISANCE IN COUNT X

Count X of the Complaint should be dismissed with prejudice because it fails to state a cause of action or a claim upon which relief can be granted.

If plaintiffs maintain they are alleging a private nuisance in Count X, plaintiffs again fail to state a cause of action or a claim upon which relief can be granted because plaintiffs fail to allege that MCCLELLAN's alleged activities are unreasonable, unwarranted or not authorized by law.

In Corbett v. Eastern Airlines, Inc., 166 So.2d 196 (Fla. 1964), the plaintiffs were owners of a certain restaurant near the Jacksonville Airport in Duval County, Florida. Air carriers Eastern, Northeast, United and Delta were sued for nuisance due, in part, to

their "taking or the use of the air-space on, above and surrounding, plaintiffs' property and restaurant business ..." Id. at 200.  Looking to the case of Beckman v. Marshall, 85 So.2d 552 (1956), the Supreme Court of Florida in Corbett cited to the following language from the Ohio Court of Appeals in Atonik v. Chamberlain, 81 Ohio App. 465, 78 N.E.2d 752 (1947):

> \*\*\*

> \* \* \* The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances, and whether there is "an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure.  It must be real and not fanciful or imaginary, or such as results merely in a trifling annoyance, inconvenience, or discomfort."  \* \* \*

> "It is not everything in the nature of a nuisance which is prohibited. There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort, or injury to his neighbor, which are damnum absque injuria.  \* \* \*

> "The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or that the injury was the natural consequence, or that the act is in the nature of a nuisance, but the inquiry is, Was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property? having regard to all interests affected, his own and those of his neighbors, and having in view, also, public policy.' \* \* \*

> 'All systems of jurisprudence recognize the requirement of compromises in the social state.  Members of society must submit to annoyances consequent upon the reasonable use of property.  'Sic utere tuo ut alienum non laedas' is an old maxim which has a broad application.  If such rule were held to mean that one must never use his own property in such a way as to do any injury to his neighbor or his property, it could not be enforced in civilized society.  People who live in organized communities must of necessity suffer some damage, inconvenience and annoyance from their neighbors.   For these annoyances, inconveniences and damages, they are generally compensated by the advantages incident to living to a civilized state.'

\*\*\*

Plaintiffs' Complaint alleges that Koppers Inc.'s Gainesville plant treated and distributed utility poles made from untreated logs transported to and from the Koppers Site (see Complaint, ¶ 25). It is well known that the Kopper's wood-treating operations have been active since 1916.[6] If Plaintiffs are attempting to allege a private nuisance in Count X, such an action must fail because it is unequivocal that plaintiffs have chosen to live near or adjacent to a commercial or industrial operation, are charged with knowledge that they would be subjected to some sort of unpleasant factor or factors and cannot now complain. This rationale is set forth in the Supreme Court of Florida case of <u>Lee v. Florida Public Utilities Co.</u>, 145 So.2d 299 (Fla. 1962), which states.

\*\*\*

> 'It appears to be well settled that if one voluntarily elects to live in an industrial area, he cannot complain of noise, noxious orders or any other unpleasant factors that may arise from the normal operation of business in the area merely because they may interfere with his personal satisfaction or aesthetic enjoyment. It is said that no one can move into an area given over to foundries and boiler shops and demand the quiet of a farm.'

In the instant case, Plaintiffs elected to purchase homes and/or live next to a wood treating facility. In making this choice, Plaintiffs cannot dispute or ignore that they did so with the knowledge that logs would be delivered and transported for treatment at the Site, and that chemicals would be used for such treatment.

---

[6] See United States EPA Cabot/Koppers NPL Site Summary – Land Cleanup and Wastes/Region 4 at <u>www.epa.gov/region4/waste/npl/nplflin/cabkopfl.htm</u>. Pursuant to Fed.R.Evidence 201(b), MCCLELLAN respectfully requests that this court take judicial notice of the length of time that Koppers' wood treating plant has been in business at the subject location.

Finally, while the Plaintiffs allege "toxic dust" was stirred up causing damage by MCCLELLAN, Plaintiffs fail to include sufficient allegations that MCCLELLAN's actions were "unreasonable, unwarrantable, or unlawful"; consequently, this "basic deficiency" dooms Plaintiffs' nuisance claim against MCCLELLAN.  Corbett, supra, 166 So.2d at 203.

Turning now to Count X at paragraph 113 of the Complaint, Plaintiffs' allegations include the following with regard to MCCLELLAN's delivery of logs to the Site and a citation to §386.01, Fla. Stat.:

> \*\*\*
>
> 113.   This extreme health hazard is an obstruction to the free use of Representative Plaintiffs' and Named Plaintiff's and Class members' properties, interferes with Representative Plaintiffs' and Named Plaintiff's and Class members' comfortable enjoyment of life and property, and therefore constitutes a nuisance under Section 386.01, Florida Statutes.
>
> \*\*\*

Found at Title XXIX, Public Health, §386.01, Fla. Stat., is entitled "Sanitary nuisance" and reads in pertinent part as follows:

> 386.01   **Sanitary nuisance.**  – A sanitary nuisance is the commission of any act, by an individual, municipality, organization, or corporation, or the keeping, maintain, propagation, existence, or permission of anything, by an individual, municipality, organization, or corporation, by which the health or life of an individual, or the health or lives of individuals, may be threatened or impaired, or by which or through which, directly or indirectly, disease may be cause.

Part I of Chapter 386 or §386.01 through §386.051, Fla. Stats. does not provide a private cause of action sounding in nuisance to the Plaintiffs; rather, §§386.01-386.051

outline a protocol for Florida's Department of Health to define, investigate and determine the existence of a sanitary nuisance, notify the offending parties and take those statutorily provided steps to abate the nuisance or initiate criminal, civil or administrative proceedings.  Because Chapter 386, Fla. Stats., does not create a private cause of action, Count X must be dismissed.

## G.   CONCLUSION

For the reasons discussed herein, Plaintiffs' claims against MCCLELLAN cannot survive this motion to dismiss; therefore, MCCLELLAN respectfully requests this Honorable Court to dismiss all claims asserted against MCCLELLAN by Plaintiffs, specifically Counts III, V, VIII and X of Plaintiffs' Complaint, with prejudice.

## CERTIFICATION UNDER RULE 7.1(B)

Pursuant to Local Rule 7.1(B), the undersigned counsel has attempted to confer with counsel for the Plaintiffs via telephone in a good faith effort to resolve by agreement the issues raised herein, but was unsuccessful.  The parties were thus not able to resolve these issues or come to any mutual agreement thereon.  If the parties are subsequently able to reach an agreeable resolution to any of the issues raised herein, the undersigned counsel will notify the Court accordingly.

## REQUEST FOR ORAL ARGUMENT

MCCLELLAN hereby requests oral argument on the issues raised in this motion to dismiss. MCCLELLAN estimates that a total of one (1) hour will be required for oral argument on issues raised herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **13th** day of **January, 2011**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/   Kelly L. Wilson-Timmins*
**RANDY FISCHER, ESQUIRE**
Florida Bar No. 0218456
*rfischer@boehmbrown.com*
Boehm, Brown, Fischer, Harwood,
  Kelly & Scheihing, P.A.
233 SW 3rd Street
Ocala, Florida 34471
Telephone    (352) 622-8162
Facsimile    (352) 732-8808
**KELLY L. WILSON-TIMMINS,**
  **ATTORNEY-AT-LAW**
Florida Bar No. 65121
*kwilson@boehmbrown.com*
Boehm, Brown, Fischer, Harwood,
  Kelly & Scheihing, P.A.
101 Southhall Lane, Suite 375
Maitland, Florida 32751
Telephone    (407) 660-0990
Facsimile    (407) 660-5052
**Attorneys for McClellan Logging, Inc.**

## SERVICE LIST
## LEE-BOLTON ET AL. V. MCCLELLAN LOGGING, INC. ET AL.

### United States District Court, Northern District of Florida, Gainesville Division

**Paul Stuart Rothstein, Esquire**
psr@rothsteinforjustice.com
Paul S. Rothstein, P.A.
626 N.E. 1st Street
Gainesville, Florida 32601-3391
(352) 376-7650 Telephone
(453) 374-7133 Facsimile
Attorneys for Plaintiffs
CM/ECF

**Benjamin Harvey Hill, III, Esquire**
bhill@hwhlaw.com
Hill, Ward & Henderson P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, Florida 33602
(813) 221-3900 Telephone
(813) 221-2900 Facsimile
Attorneys for Defendants Koppers Inc., Beazer East, Inc. and Koppers Holdings, Inc.
CM/ECF

**Casey G. Reeder, Esquire**
creeder@hwhlaw.com
Hill, Ward & Henderson P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, Florida 33602
(813) 221-3900 Telephone
(813) 221-2900 Facsimile
Attorneys for Defendants Koppers Inc., Beazer East, Inc. and Koppers Holdings, Inc.
CM/ECF

**Dennis Parker Waggoner, Esquire**
dwaggoner@hwhlaw.com
Hill, Ward & Henderson P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, Florida 33602
(813) 221-3900 Telephone
(813) 221-2900 Facsimile
Attorneys for Defendants Koppers Inc., Beazer East, Inc. and Koppers Holdings, Inc.
CM/ECF

**David A. Kanter, Esquire**
kanter@wildman.com
Wildman, Harrold, Allen, et al.
225 W. Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 201-2683 Telephone
(312) 416-4545 Facsimile
Attorneys for Defendants Koppers Inc., Beazer East, Inc. and Koppers Holdings, Inc.
CM/ECF

**Megan Colleen Millirons, Attorney at Law**
millirons@wildman.com
Wildman, Harrold, Allen, et al.
225 W. Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 201-2874 Telephone
(312) 416-4811 Facsimile
Attorneys for Defendants Koppers Inc., Beazer East, Inc. and Koppers Holdings, Inc.
CM/ECF

**Paul Keller Freeborn, Esquire**
freeborn@wildman.com
Wildman, Harrold, Allen, et al.
225 W. Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 201-2000 Telephone
(312) 201-2555 Facsimile
Attorneys for Defendants Koppers Inc., Beazer East, Inc. and Koppers Holdings, Inc.
CM/ECF