IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LISA LEE-BOLTON and RICHARD
BOLTON, on behalf of themselves
and all others similarly situated,
and ROY GEIERSBACH
on behalf of himself,

       Plaintiffs,

v.                                     CASE NO. 1:10-cv-253-SPM-GRJ

KOPPERS INC.,
f/k/a/ KOPPERS INDUSTRIES, INC.,
BEAZER EAST, INC.,
f/k/a KOPPERS COMPANY, INC.,
KOPPERS HOLDINGS, INC.,
HEIDELBERG CEMENT AG,
MCCLELLAN LOGGING, INC.,
and UNNAMED TRUCKING COMPANIES,

       Defendants.
_____ /

## REPORT AND RECOMMENDATION

Pending before the Court on an Order of Reference (Doc. 32) is Plaintiffs' Motion

To Remand. (Doc. 30.)  Defendants Koppers Inc. ("Koppers"), Beazer East, Inc.

("Beazer"), and Koppers Holdings, Inc. ("Koppers Holdings") have collectively filed a

single response in opposition to the motion. (Doc. 39.) Defendant McClellan Logging,

Inc. ("McClellan") also has filed a response in opposition to Plaintiff's motion. (Doc. 41.)

Accordingly, the motion is ripe for consideration.  For the reasons discussed below,

Plaintiffs' motion is due to be denied.

## I.  BACKGROUND AND FACTS

This case concerns the alleged contamination of properties located near a wood

treatment facility (the "Koppers Site") in the city of Gainesville, Florida allegedly caused by the discharge of toxic chemicals from the facility into the surrounding soil and groundwater.  Plaintiffs, landowners in the area bordering the Koppers Site, have filed a Class Action Complaint alleging that "the activities of Defendants and/or their predecessor entities whose conduct in connection with a longstanding toxic wood treatment facility ... caused the contamination of properties surrounding" the Koppers Site.  (Doc. 1 Exh. A.)  The Class Action Complaint includes claims for equitable and injunctive relief, violation of the Florida Water Quality Assurance Act ("WQAA"), negligence, negligence *per se*, strict liability for ultrahazardous activities, nuisance and trespass.

Plaintiffs originally filed the class action complaint on November 18, 2010 in the Circuit Court for the Eighth Judicial Circuit in and for Alachua County, Florida. Defendants Koppers Holdings, Beazer East, and Koppers (collectively, "Koppers Defendants") removed the case to this Court on December 23, 2010 under the Class Action Fairness Act of 2005 ("CAFA").  In their Notice of Removal, the Koppers Defendants contend that removal under CAFA was proper because there are more than 100 potential class members of the putative class defined in the Plaintiffs' Class Action Complaint and the amount in controversy involved in this action is in excess of CAFA's $5,000,000 jurisdictional threshold.  (Doc. 1.)  The Koppers Defendants also contend that even if the requirements for removal under CAFA were not satisfied removal, nonetheless, was proper based upon diversity jurisdiction under 28 U.S.C. § 1332(a). The Koppers Defendants contend that even though Defendant McClellan is a Florida corporation –  and thus not diverse from the Florida Plaintiffs –  the citizenship

of Defendant McClellan should be ignored because Defendant McClellan was fraudulently joined.

Plaintiffs timely filed a Motion To Remand (Doc. 30) requesting the Court to remand this action to state court because the total number of potential class members is less than CAFA's 100 member minimum threshold and because the amount in controversy does not satisfy CAFA's $5,000,000 threshold.  Plaintiffs also contend that removal based upon diversity jurisdiction was improper because McClellan was not fraudulently joined in this action.

## II.  DISCUSSION

### A.    Removal under CAFA

CAFA was enacted by Congress in 2005 to "address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel" and did so by enlarging the universe of cases that can be removed pursuant to 28 U.S.C. § 1441 to include proposed class actions.  Lowery v. Alabama Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007); 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & JOAN E. STEINMAN., FEDERAL PRACTICE AND PROCEDURE § 3724 (4th ed. 2009).  In enacting CAFA Congress "perceived that state courts were overly friendly toward class certification, provided insufficient notice to class members, and favored some plaintiffs over others in making class awards."  Id. at *1.

CAFA bestows subject-matter jurisdiction on a federal court, thus, allowing for the removal of class action suits if: (i) the number of proposed class members is not less than 100; (ii) minimal diversity exists in that a member of the proposed class is a citizen of a state different from any defendant; and (iii) the aggregate amount in controversy,

excluding interest and costs, exceeds $5,000,000.  28 U.S.C. § 1332(d)(11). The party

removing an action under CAFA bears the burden of establishing that CAFA's

requirements have been met by a preponderance of the evidence, meaning that the

removing party must show that it is more likely than not that CAFA's requirements have

been met.  Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010).

Satisfying CAFA is not the only requirement. As the parties removing the action

the Koppers Defendants also bear "the burden of establishing both federal jurisdiction

and compliance with the procedures for removal set out in 28 U.S.C. § 1446, as a matter

of fact and law." Englemann v. Hartford Cas. Ins. Co., No. 8:09-cv-2274-T-30EAJ, 2009

WL 5166551, at *1 (M.D. Fla. Dec. 23, 2009). The traditional procedural rules governing

removal under 28 U.S.C. § 1446 still apply to CAFA removals and must also be satisfied

even if CAFA's requirements are otherwise met.  28 U.S.C. § 1453(b). There is no issue

in this case that the removal complied with the procedural rules for removal and that the

removal occurred within 30 days of receipt of the complaint as required by 28 U.S.C. §

1446(b).[1]

CAFA's minimal diversity requirement also is not seriously in dispute. Each

Koppers Defendant is a foreign corporation and Plaintiffs are residents of Florida, thus,

satisfying CAFA's minimal diversity requirement.

Thus, the two issues the Court must consider in determining whether removal

was proper under CAFA are: whether the Koppers Defendants have met their burden of

demonstrating that the class member numerosity requirement of CAFA has been met

---

[1] Defendants Koppers and Beazer were served on November 23, 2010. Defendant Koppers Holdings was served on December 8, 2010. The Notice of Removal was filed in this Court on December 23, 2010, 30 days after service.

and whether the Koppers Defendants have met their burden of demonstrating that the amount in controversy is in excess of $5,000,000.  The Court will address each issue in turn.

### B.    Removal by the Koppers Defendants Under CAFA

#### 1.    Number of Potential Class Members

28 U.S.C. § 1332(d)(11) provides that a defendant may remove a putative class action under CAFA only if the number of proposed class members is not less than 100. Section 1332(d)(1)(B) defines the term "class members" as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action."  28 U.S.C. § 1332(d)(1)(B).  Plaintiffs' Class Action Complaint defines the putative class in this action as:

> All persons and legal entities that appear on a recorded deed as the owners, as of November 18, 2010, of property that: a. is located in the Affected Area; b. is designated as available for residential use according to the records of the Alachua County Property Appraiser; and c. is or has been affected by those toxic and dangerous chemicals and/or hazardous substances used at the Koppers Site.  Excluded from the Class are the following: A. The Defendants, and any parents, subsidiary, or affiliate organizations, and the officers, directors, agents, servants or employees of same and the members of the immediate family of any such person; B. All persons and entities who timely opt out of this proceeding.; C. All persons who have given valid releases releasing the Defendants from the claims asserted in this complaint; D. All persons who, prior to the date of the filing of this complaint, have filed a non-class action claim against the Defendants for claims asserted in this complaint; E. All persons who have signed a retainer agreement with an attorney other than the undersigned counsel to maintain an individual action and/or a class action based in whole or in part on the claims contained in this complaint.; F. All Circuit Judges of the Eighth Judicial Circuit who reside in Alachua County, Florida and all Alachua County Court judges, as well as all employees of those judges, including law clerks.

(Doc. 1 Exh. A p. 14.)  The "Affected Area" is defined in the Class Action Complaint as

"the area in the City of Gainesville, Alachua County, Florida, west of the western boundary of the Koppers Site, east of NW 6th Street, south of NW 31st Lane, and north of NW 23rd Avenue."  (Id. p. 2.)

The Koppers Defendants contend in their Notice of Removal that a search of the Alachua County Property Appraiser's ("ACPA") records for the Affected Area discloses that there are at least 108, and potentially as many as 114, separate owners of property located in the Affected Area that are designated as available for residential use.  (Doc. 1.)  As an Exhibit to their Notice of Removal, the Koppers Defendants include an Affidavit of Casey Reeder.  (Doc. 1 Exh. C.)  Ms. Reeder, an associate attorney with the Florida law firm representing the Koppers Defendants, attests that she accessed the records of the ACPA via its website, used maps and other search tools on that website to identify the parcel numbers for all properties within the Affected Area and then reviewed the ACPA's property records for each property.  Ms. Reeder then accessed the Alachua County Clerk of Court's website to review the most recent recorded deed for each property within the Affected Area.  Based on her review, Ms. Reeder concluded that there are between 108 and 114 potential members of the putative class as it is defined in the Class Action Complaint.  As an exhibit to their response to Plaintiffs' motion to remand, the Koppers Defendants provided a list of the 114 putative class members that Ms. Reeder identified from her review of both the ACPA property records and recorded deeds for each property.[2] (Doc. 39 Exh. B.)

---

[2] As an exhibit to their motion to remand, Plaintiffs provided an earlier list of 112 putative class members compiled by the Defendants. (Doc. 30 Exh. 1.) The only difference between this list and the list submitted by the Koppers Defendants as an exhibit to their response to the motion to remand is the exclusion of two putative class members, Johnnie Boggs and William B. Forrester, who are deceased. All references to specific putative class members by number will be with respect to the number in which they

Plaintiffs contend that the Court should exclude from the count of putative class members a number of the 114 individuals and legal entities, listed by the Koppers Defendants.  In support of their position Plaintiffs have filed an affidavit from Jamie Arjona, a legal assistant employed by Plaintiffs' counsel, as well as copies of the ACPA property records and recorded deeds for the properties within the Affected Area. (Doc. 30 Exhs. A, 1-8.)  The Court will address each of Plaintiffs' challenges to the list of putative class members relied upon by the Koppers Defendants.

### a.    Deceased Property Owners

Four of the putative class members on the Koppers Defendants' list of potential putative class members are deceased.[3]  Each of these four deceased property owners would be unable to take part in this action as putative class members and, thus, the Court will exclude each of these four individuals from the count of the number of putative class members. Excluding these four deceased individuals reduces the size of the putative class to 110 members.

### b.    Properties Used For Non-Residential Purposes

The description of the class in the Class Action Complaint provides that in addition to being located inside the Affected Area, a property must also be "designated as available for residential use according to the records of the Alachua County Property Appraiser."  (Doc. 1 Exh. A p. 14.)  Plaintiffs contend that two parcels should be excluded from the calculation of the size of the class because both properties currently

---

appear on the list of putative class members that Koppers Defendants included as an exhibit to their response to Plaintiffs' motion to remand. (Doc. 39 Exh. B.)

[3] These class members are Janie G. O'Steen (64), Frank Monkus (71), William B. Forrester (103), and Johnnie Boggs (108). (Doc. 30 Exh. 1 & Doc. 49 Exhs. A & B.)

are not being used for residential purposes.

Parcel #08251-000-000, located at 2301 NW 6th Street, is owned by J&J Real

Estate Ltd. (1 on the list).  (Doc. 30 Exh. 3.)  Plaintiffs contend that this property should

be excluded from the putative class because the entry in the "Use" column under the

Assessment History section of the ACPA property record for this property reads

"STORES."  (Id.)  Ms. Arjona avers in her affidavit that she visited this parcel and "the

parcel currently contains an ABC Liquor Store and accompanying parking lot."  (Doc. 30

Exh. A p. 3.)

On the other hand, while an ABC Liquor Store may be located on the parcel, the

ACPA record for this parcel reflects that although 3.56 acres of the parcel are zoned

Commercial and are listed for use as a Nightclub, another 2.56 acres of the parcel are

zoned Residential Multi-Family.  (Doc. 30 Exh. 3.)  There is no requirement in the class

definition specified in Plaintiffs' Class Action Complaint that a property must be used for

residential purposes, but rather only that each property must be "designated as available

for residential use according to the records of the Alachua County Property Appraiser."

(Doc. 1 Exh. A p. 14.)  Because several acres of the parcel owned by J&J Real Estate

Ltd. is zoned for Multi-Family Residential use according to the ACPA property records

the parcel meets the definition of a property "designated as available for residential use

according to the records of the Alachua County Property Appraiser."   Accordingly, the

parcel owned by J&J Real Estate Ltd. is a putative class member and is included in the

calculation of the size of the class.

Plaintiffs also contend that parcel #08481-003-000, located at 512 NW 26th

Avenue,  owned by Santa Fe College Foundation, Inc. (28 on the list), should be

excluded from the calculation of the putative class because, although the property is zoned residential, it is currently vacant.  Ms. Arjona attests in her affidavit that upon inspection the parcel "did not contain any structure and was densely overgrown with brush, grass and trees."  (Doc. 30 Exh. A p. 2.)  The ACPA property record for this parcel reflects an entry in the "Use" column under the Assessment History section that reads "VACANT" for 2010 and 2009, but "SINGLE FAMILY" for the years 1995-2008. (Doc. 30 Exh. 2.)  Notably, however, the property is zoned residential according to the property record.  (Id.)  Because this property is zoned residential it satisfies the requirement that the parcel be designated as available for residential use according to the ACPA.  The class definition does not mandate that a structure be built on the property but only that the property is designated for residential use. Accordingly, Santa Fe College Foundation, Inc. will also not be excluded from the putative class member count.

### c.      Putative Class Member Opt Outs

Plaintiffs also contend that two putative class members should be excluded from the calculation of the size of the class because each purportedly has timely opted out of this action – one of the exclusions from the class definition.  As support for their argument Plaintiffs provided affidavits from the two putative class members, David Turlington (22 on Koppers Defendants' list) and Susan Turlington (2 on the list), in which each attests that he or she has no desire to join this action.[4]  (Doc. 51 Exhs. A & B.)

---

[4] In their Motion To Remand, Plaintiffs provided an affidavit from Dale Turlington in which Mr. Turlington stated that: "I told Attorney Paul S. Rothstein that I and my wife, Susan Turlington, opted out of being part of the class action known as the Bolton class action now pending in the United States District Court for the Northern District of Florida in case number 1:10-cv-00253." (Doc. 30 Exh. 8 p. 2.) Plaintiffs subsequently provided the Court with separate affidavits from both Dale and Susan Turlington in which

Plaintiffs contend that these statements are sufficient to exclude Dale and Susan

Turlington from the putative class.  Plaintiffs' argument ignores the fact that putative

class members cannot opt out of the class until the class has been certified and a proper

notice under Fed. R. Civ. P. 23(b)(3) has been issued.

      Fed. R. Civ. P.23(c)(2)(C) provides that "[f]or any class certified under Rule

23(b)(3), the court must direct to class members the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified

through reasonable effort."   This notice "must clearly and concisely state in plain, easily

understood language: (i) the nature of the action; (ii) the definition of the class certified;

(iii) the class claims, issues, or defenses; (iv) that a class member may enter an

appearance through an attorney if the member so desires; (v) that the court will exclude

from the class any member who requests exclusion; (vi) *the time and manner for

requesting exclusion*; and (vii) the binding effect of a class judgment on members under

Rule 23(c)(3)."  FED. R. CIV. P.23(c)(2)(C) (emphasis added).

      As such, potential class members in a putative class action cannot validly opt out

of becoming class members until after they receive the required notice under Rule 23.

*See* Kleiner v. First Nat. Bank of Atlanta, 751 F. 2d 1193, 1202-03 (11th Cir. 1985)("The

'best practicable notice' envisioned by the Rule is notice that conveys objective, neutral

information about the nature of the claim and the consequences of proceeding as a

class.  Unsupervised, unilateral communications with the plaintiff class sabotage the

---

each stated a desire not to be a part of this action. *See* exhibits to Plaintiffs' Motion To File Supplementary
Exhibits In Support Of Motion To Remand And Motion For Leave To File Additional Affidavits In Support
Of Motion To Remand If Defendants' Motion To Strike Is Granted. (Doc. 51 Exhs. A & B.)

goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.").  Because the Court has not yet certified Plaintiffs' proposed class, putative class members – including the Turlingtons –   cannot be called upon to make an informed decision as to whether they wish to be excluded from the class. That process will take place at the appropriate time under this Court's supervision pursuant to the procedures set forth in Fed. R. Civ. P. 23.  The decision by a putative class member to opt out of a class that has not yet been certified and based upon a unilateral communication by a legal assistant employed by Plaintiffs' counsel simply has no legal effect.  Accordingly, the Court concludes that the affidavits from Dale Turlington and Susan Turlington are insufficient to exclude them from the count of the total number of putative class members.

### d.    Trustees of a Parcel Held In Trust

Plaintiffs also contend that the Koppers Defendants included in their count of the putative class members a property in the Affected Area that is held in trust.  Parcel #08252-001-001, located at 535 NW 26th Avenue, is held in trust as part of the Ruth W. Hope Revocable Trust, of which Carolyn H. McPherson (8 on Koppers Defendants' list) and Deborah H. Darsey (9 on the list) are the trustees.  Both trustees are named in the recorded warranty deed for this parcel.  (Doc. 3 Exh. 6.)

Plaintiffs assert that because the legal entity which owns this property is the Ruth W. Hope Revocable Trust only the trust – and not the trustees – should be counted as a putative class member.  (Doc. 30 Exh. 6.)  Under Florida law, however, legal title to property that is held in trust is in the name of trustee(s), not the trust itself. See, e.g., Hansen v. Bothe, 10 So. 3d 213, 216 (Fla. Dist. Ct. App. 2009)("Upon the establishment

of a trust, the legal title is held by the trustee, but equitable title rests with the beneficiary.").  Ms. Darsey and Ms. McPherson hold legal title to this parcel as the trustees of the Ruth W. Hope Revocable Trust and because each of them appear on the recorded deed for this parcel each of the trustees is a potential party to the class action. Accordingly, both trustees should be counted as putative class members.

### e.  The Property Interests of Remaindermen

Plaintiffs also contend that certain of the ownership interests conveyed in the deed for parcel #8472-000-000, located at 518 NW 27th Avenue, are invalid and should not be included in the count of the putative class members.  In the recorded deed for this parcel, Paul Jankura (39 on Koppers Defendants' list) granted himself a life estate with remainder, if any, to his brothers, Kenneth Jankura (40) and Joseph Jankura (41), as joint tenants with right of survivorship, while also reserving for himself the right to convey, mortgage, lease or otherwise dispose of the parcel in fee simple.  (Doc. 30 Exh. 7.)  According to Plaintiffs, "[t]his life estate was improperly conveyed ... and no property interest was transferred to Kenneth Jankura or Jacob Jankura" and consequently neither brother should be included in the class member count.  (Doc. 30 p. 6.)  This argument ignores the fact that both brothers specifically appear in the recorded deed as having an interest in the property, which would satisfy the class definition. The argument also misses the point. The issue is not whether a valid challenge could be made by someone that the conveyance was invalid. Rather, the issue is simply whether Kenneth and Joseph Jakura, as named remaindermen, would have a legal right or standing to be parties in a suit effecting the property. The Court concludes that they do under Florida law.

Under Florida law although a remainderman does not have a right of action regarding claims concerning possession of the property – such as actions for ejectment, trespass, or partition –  a remainderman does have the right to bring an action where the interest of the remainderman in the estate is threatened or damaged. Weed v. Knox, 27 So. 2d 419, 420 (Fla. 1946).  Here, because the claims in the class action complaint relate to the damage to the property, the interests of the remaindermen are directly implicated and, thus, Kenneth and Jacob Jankura – who "appear in a recorded deed as the owners" of a property located within the Affected Area – should be included in the list of putative class members.

### f.      Retainer Agreements with Other Attorneys

In their class definition Plaintiffs expressly exclude from the class  "[a]ll persons who have signed a retainer agreement with an attorney other than the undersigned counsel to maintain an individual action and/or a class action based in whole or in part on the claims contained in this complaint."  (Doc. 1 Exh. A p. 14.) Plaintiffs' counsel represents that several different groups of property owners in the Affected Area have signed retainer agreements with other counsel and therefore should be excluded form the calculation of the size of the class.

One of those groups of putative class members filed a separate action in this Court against the Koppers Defendants and one additional defendant alleging that the defendants caused toxic substances and hazardous materials to leave the Koppers Site and contaminate a nearby area roughly equivalent to the Affected Area.[5]  See, case no.

---

[5] The complaint in Case No. 1:10-cv-71-MP-GRJ defined its "Class Affected Area" for purposes of that action as the "geographic area within approximately a two-mile radius from the [Koppers] site, but not including the [Koppers] Site itself." (Case No. 1:10-cv-71-MP-GRJ Doc. 1.)

1:10-cv-71-MP-GRJ, Doc. 1.  One of the named plaintiffs in that action, Farinda E.

O'Steen, appears on Koppers Defendants' list of putative class members (68) in this

action.  Accordingly, because Ms. O'Steen was represented by an attorney she should

be excluded from the list of putative class members. The exclusion of Ms. O'Steen still

leaves 109 putative class members.

Plaintiffs further argue that while researching case no. 1:10-cv-71-MP-GRJ Ms.

Arjona  "was informed that an additional four potential class members have signed

retainer agreements with Parker Waichman Alonso LLP" in that action. The four property

owners who signed retainer agreements are: James Frank O'Steen (67), Farinda

O'Steen (68), Selena Pak Patterson (77), and Eric Hushelpeck (104). There is, however,

nothing on the docket in that case which evidences that these four individuals have

signed retainer agreements. Indeed, none of these four putative class members – other

than Farinda O'Steen – are currently listed in any documents on the docket in that case.

Instead, Plaintiffs urge the Court to accept the hearsay assertion of a legal assistant

employed by Plaintiffs' counsel, without any other supporting information or evidence.

There is no evidence of record from the attorney who allegedly represents these four

individuals demonstrating that he or she has been retained nor is there any evidence

from the four property owners suggesting that any of them have signed a retainer

agreement. Accordingly, for these reasons, the Court concludes that other than with

respect to Farinda O'Steen, Plaintiffs have not made a showing that the other three

individuals should be excluded from the calculation of putative class members.[6]

---

[6] The Koppers Defendants have filed a motion to exclude various statements by Ms. Arjona in her
affidavit that Koppers Defendants contend are inadmissible hearsay. (Doc. 40.)  As explained in greater
detail in this report and recommendation, it is unnecessary to determine whether the statements in Ms.

Ms. Arjona also provides in her affidavit that Carla Melgarejo, another individual appearing on the Koppers Defendants' list as 94, has retained an attorney, Jennifer Springfield, to represent Ms. Melgarejo "in an individual, separate action based in part on claims contained in the Lee-Bolton Complaint." Based upon that information Plaintiffs urge the Court to exclude Ms. Melgarejo from its putative class member count.  (Doc. 30 Exh. A p. 5.)  Plaintiffs again provide no support for this assertion aside from Ms. Arjona's statement, which is an insufficient basis for this Court to exclude Ms. Melgarejo from its class member count.

Plaintiffs go on to argue that three other putative class members have signed retainer agreements with Tanner Andrews, an attorney from DeLand, Florida, to represent them in connection with a property tax reassessment proceeding.  Plaintiffs rely upon correspondence from Attorney Andrews to the Clerk of Court of the Alachua County Value Adjustment Board ("VAB") and a recommendation from a Special Magistrate to the VAB.[7]  (Doc. 51 Exhs. C & D.)  According to Ms. Arjona, she spoke with Mr. Andrews at a VAB hearing and Mr. Andrews told her that he had "signed retainer agreements for three property owners in Plaintiff's Affected Area for representation in a tax reassessment against the Alachua County Property Appraiser's office based on property value diminution resulting from Koppers."  (Doc. 30 Exh. A p. 4.)  Based upon this information Plaintiffs contend that these three putative class

---

Arjona's affidavit should be stricken as inadmissible hearsay because even if the Court accepted Ms. Arjona's statements and excluded the four individuals from the putative class there would still be more than 100 members in the class.

[7] Plaintiffs provided these two documents as exhibits to Plaintiffs' Motion To File Supplementary Exhibits In Support Of Motion To Remand And Motion For Leave To File Additional Affidavits In Support Of Motion To Remand If Defendants' Motion To Strike Is Granted. (Doc. 51 Exhs. C & D.)

members, Karen Scott (29), Charles Mills (50), and Danielle Devincenzo King (51),

should be excluded from the class count.

Assuming for purposes of this motion that the information provided by Plaintiffs is

sufficient to establish that Scott, Mills and King signed a retainer agreement with

Attorney Tanner, that alone does not establish that these three individuals should be

excluded from the class because a tax reassessment is not an 'action' within the context

of the class definition in the Class Action Complaint. The tax assessment proceeding is

not an attempt to obtain compensation for the harm allegedly inflicted on the properties

but rather is an action aimed at reducing the property taxes on those properties based

upon the decline in their value as a result of their proximity to the Koppers Site.  Thus,

the relief sought in the tax reassessment action is completely distinct from that sought by

the Plaintiffs in this action. This distinction is important because the "carve-out" in the

class definition expressly relates to other actions  "based in whole or in part on the

*claims*" in the Class Action Complaint.  The claims in this case include negligence,

negligence *per se*, violations of the WQAA, strict liability for ultrahazardous activities,

nuisance, trespass, and injunctive and equitable relief. Notably, the claims do not

include claims for reassessment of the assessed values of the properties in the Affected

Area.  Accordingly, Ms. Scott, Mr. Mills, and Ms. King should not be excluded from the

class count simply because they may have hired an attorney to challenge their property

assessment before the VAB.

Accordingly, for all of these reasons, the Court concludes that the Koppers

Defendants have met their burden of demonstrating that it is more likely than not that the

number of proposed class members under Plaintiffs' class definition is not less than 100.

From the list of 19 class members that Plaintiffs urge the Court to exclude from the

putative class calculation [8] only the four deceased individuals and Farinda O'Steen, who

is a party to another lawsuit in this Court, should be excluded from the calculation of the

size of the putative class. Excluding these individuals still leaves 109 putative class

members, more than sufficient to satisfy CAFA's requirement that the class is not less

than 100.

### 2.    Amount in Controversy

Plaintiffs also contend that the Koppers Defendants have not met their burden of

demonstrating that it is more likely than not that the amount in controversy involves at

least $5,000,000.  In determining whether subject matter jurisdiction has been satisfied

the Court must focus upon the amount in controversy at the time that the case is

removed and not at any later point.  See Poor v. American-Amicable Life Ins. Co. Of

Texas, 218 F.3d 1287, 1290-91 (11th Cir. 2000); Lake County v. NRG/Recovery Group,

Inc., 144 F. Supp.2d 1316, 1319 (M.D. Fla. 2001). The typical rule for determining the

amount in controversy where an action has been removed "is said to be measured for

subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to

enforce or to protect against the defendant or the value of the object that is the subject

matter of the action."  14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H.

COOPER & JOAN E. STEINMAN., FEDERAL PRACTICE AND PROCEDURE § 3708 (4th ed. 2009).

The question is not how much the plaintiff will ultimately recover in the case, but instead

---

[8] Although Plaintiffs only requested in their motion to remand that the Court exclude 17 putative class members in Koppers Defendants' putative class member count, Plaintiffs subsequently filed information that putative class members Johnnie Boggs and William Forrester are deceased, which would increase the total number of disputed putative class members to 19.

"'the pertinent question is what is *in controversy* in the case.'" Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) (quoting Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009)). "When a plaintiff seeks injunctive or declaratory relief, . . . 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'" Jackson-Shaw Co. v. Jacksonville Aviation Auth., 510 F. Supp. 2d 691, 714 (M.D. Fla. 2007) (quoting Federated Mut. Ins. Co. v. McKinnon Motors, Inc., 329 F.3d 805, 807 (11th Cir. 2003)).

In determining whether CAFA's $5,000,000 amount in controversy requirement has been satisfied, a court first examines whether it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.  There are cases in which "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when the 'complaint does not claim a specific amount of damages.'"  Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010)(quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010)).  A careful attempt by a plaintiff, however, to avoid jurisdiction in federal court by failing to specify in the complaint a specific amount of damages requested will not keep such an action out of federal court.  Id.  When determining whether or not the $5,000,000 minimum amount in controversy amount under CAFA has been reached, a court is not "bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought" because "in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy."  Id. The Court also is permitted to examine a wide range of materials, such as the notice of removal, non-sworn letters, or

other summary judgment type evidence.  Pretka v. Kolter City Plaza II, Inc., 608 F.3d

744, 754 (11th Cir. 2010).

In this instance, Plaintiffs' Class Action Complaint provides little detail regarding

the amount in controversy other than a vague assertion that "[t]his is an action for

damages which exceed $15,000.00."  (Doc. 1 Exh. A.)  In their Notice of Removal the

Koppers Defendants contend that the amount in controversy exceeds $5,000,000 in the

aggregate, exclusive of interest and costs, as required under 28 U.S.C. § 1332(d)(2)

because Plaintiffs seek in their Class Action Complaint "[c]ompensatory damages,

including, but not limited to the difference in value of their properties but for the

contamination or, in the alternative, the cost of repairs and remediation, plus the loss of

the use and enjoyment thereof, and any other costs and expenses incurred in

connection therewith."   (Doc. 1 Exh. A.)  In addition Plaintiffs also seek post-judgment

interest, reasonable attorney's fees, costs and expenses, and "[a]n order enjoining all

activity on the Koppers Site until effective monitoring is in place on the Koppers Site and

in the Affected Area to detect, document and minimize emissions from the Koppers Site

and contamination of the Affected Area by those emissions."  Id.

While Plaintiffs have included claims for five common-law causes of action in

addition to their claims for violation of the WQAA and for injunctive and equitable relief,

in its simplest form this case is really about the damage that has occurred to the class

members' properties as a result of the purported discharge of chemical pollutants from

the Koppers Site.  Under Florida law, "[g]enerally, damages for the wrongful injury of

property are measured either by the diminution in value or the costs of repairing or

restoring the property to its condition prior to the injury, usually referred to as the

'restoration' rule." <u>Davey Compressor Co. v. City of Delray Beach</u>, 639 So. 2d 595, 596 (Fla. 1994.)  "The diminution in value is the difference between the value of real property before and after the injury." <u>Id</u>.  A plaintiff cannot, however, recover more than the value of his or her property in its original condition even if restoration costs exceed that value, which is "a means of preventing plaintiffs from being overcompensated or from receiving overlapping recovery." <u>Id</u>.  In addition, "Florida courts have consistently held that the proper measure of damages sustained by *private landowners* for contamination of groundwater is the diminution in value of the property and not restoration costs." <u>Samples v. Conoco, Inc.</u>, 165 F.Supp.2d 1303, 1317 (N.D. Fla. 2001).

Under Florida law each putative class member in this case has a claim for damages in the amount their property has diminished in value  as a result of the alleged discharge of pollutants by the Koppers Defendants at the Koppers Site.  The absolute maximum amount of each such claim under Florida law, therefore, would be the value of the property in its original condition.  Accordingly, that amount represents the outer limit of what the putative class members could receive in damages for the harm to their property allegedly caused by the Defendants.

Pointing to the Alachua County Property Appraiser's records, the Koppers Defendants represent the baseline value of all the property in the Affected Area in this action is the aggregate total of $7,722,100.  The Koppers Defendants contend that this figure results in an average value of $71,500 for each of the properties in the Affected Area.[9]  (Doc. 1.)  In making this calculation Koppers Defendants do not, however,

---

[9] Koppers Defendants arrive at this figure by dividing $7,722,100 by 108 putative class members.

account for the fact that although there may be as many as 114 putative class members there are not 114 separate properties within the Affected Area, as several properties have multiple owners.  According to the Court's count, there are only 87 separate parcels of property located within the Affected Area on the Koppers Defendants' list, which results in an average assessed value of $88,759.77 per property.  Thus, even if the Court excluded the five putative class members whom the Court has determined should be excluded from the list of putative class members there would be no affect on $7,722,100 aggregate value of all the properties in the Affected Area. As such, because Plaintiffs claim a diminution in the value of each putative class member's property, the upward limit on each claim under Florida law would be the full value of that particular piece of property.  This figure is the proper measure of the amount in controversy in this action as it is the maximum value that this action could possibly represent to each putative class member.  Accordingly, the average amount in controversy is $88,000 per parcel or an amount in controversy of $7,722,100 in the aggregate for all putative class members.

While the parties did not offer much law on the issue of using the aggregate value of the properties the case of  Irish v. BNSF Railway Co. No. 08-cv-469-slc, 2009 WL 276519, at *1 (W.D. Wis. Feb. 4, 2009) is instructive. Irish involved a putative class action originally filed in state court by a number of landowners against a railroad and several individuals claiming damages to the landowners' properties as a result of a flood that occurred in the wake of a torrential rainstorm.  The defendants there removed the case to federal court under CAFA. In concluding that removal by the defendants under CAFA was indeed proper the Irish court stated:

> Plaintiffs are seeking compensatory, consequential, incidental, [damages] against a baseline of $9 million in real property, plus personal property damage to the furniture, possessions and motor vehicles associated with hundreds of residences, and all concomitant emotional distress experienced by the property owners. The requested actual damages are well past the five million dollar mark and we haven't even factored in plaintiffs' demand for statutory treble damages for recklessness, plus their demand for punitive damages against a railroad company whose market capitalization exceeded $25 billion and had fiscal year profits in 2008 of $1.8 billion. As a result, defendants have met their burden in establishing that plaintiffs' proposed class action falls within the jurisdiction of CAFA.

Id. at 14 (footnote omitted). Thus, as an initial benchmark the Court there looked to the total aggregate value of the properties as the baseline for determining the amount in controversy.

In addition to the harm to their property Plaintiffs also seek recovery for attorneys' fees. "The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or by contract." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 808 n.4 (11th Cir 2003). While Plaintiffs are not entitled to attorney's fees with regard to their common law claims, Plaintiffs also seek recovery under the WQAA, which authorizes recovery of attorney's fees to a prevailing Plaintiff. FLA. STAT. § 376.313(6)("The court, in issuing any final judgment in any such action, may award costs of litigation (including reasonable attorney's and expert witness fees) to any party, whenever the court determines such an award is in the public interest."). While an award of attorney's fees under the WQAA is not mandatory a court may, nonetheless, consider attorney's fees in determining the amount in controversy even where the award of fees is left to the court's discretion. Cohen v. Office Depot, Inc., 204 F.3d 1069, 1079 (11th Cir. 2000)("[Plaintiff] contends that when a statutory cause of action entitles a party to recover reasonable attorney fees, the amount

in controversy includes consideration of the amount of those fees. She is correct."). Accordingly, the Court concludes that it can also consider attorney's fees under the WQAA in determining the amount in controversy. The inclusion of attorney's fees in the calculation of the amount in controversy in a class action like this case, further supports the conclusion that the amount in controversy in this case is well in excess of $5,000,000.

Plaintiffs also request equitable and injunctive relief against the Defendants in addition to compensation for harm to their property.  Plaintiffs specifically request "[a]n order enjoining all activity on the Koppers Site until effective monitoring is in place on the Koppers Site and in the Affected Area to detect, document and minimize emissions from the Koppers Site and contamination of the Affected Area by those emissions."  (Doc. 1 Exh. A.)  As noted above, "when a plaintiff seeks injunctive or declaratory relief, . . . 'the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'"  Jackson-Shaw  Co. v. Jacksonville Aviation Auth., 510 F. Supp. 2d 691, 714 (M.D. Fla. 2007) (quoting Federated Mut. Ins. Co. v. McKinnon Motors, Inc., 329 F.3d 805, 807 (11th Cir. 2003)).  The Koppers Defendants contend that if the Plaintiffs' request for an injunction is granted by this Court, then it would force Beazer to stop complying with the unilateral administrative order ("UAO") issued by the Environmental Protection Agency ("EPA") that directs Beazer to direct development of a remedial design at the Koppers Site, and thus failure to comply with the UA could result in fines of up to $37,500 daily for each day of noncompliance.

While there may some superficial appeal to this argument, the problem is that the payment of fines by Beazer to the EPA for ignoring the UA  would not provide any value

to the Plaintiffs.  Instead, the value of the requested injunctive relief to the putative class

members would be the value of each putative class member's property.  The particular

injunctive relief sought by Plaintiffs seeks to ensure that appropriate steps are taken in

order to "sufficiently monitor[] to ensure that Representative Plaintiffs' and Named

Plaintiff's and Class members' properties are not further contaminated."  (Doc. 1 Exh. A

p. 20.)  Simply put, the request for injunctive relief is aimed at protecting the value of

each class member's property – a value equal to the aggregate value of the properties.

Thus, in addition to the amount of damages in controversy and the value of any

attorney's fees, the amount in controversy with regard to Plaintiff's claims for equitable

and injunctive relief also is greater than $5,000,000.

In sum, the Court concludes that the Koppers Defendants have met their burden

of demonstrating by a preponderance of the evidence that the amount in controversy

involved in this action is well in excess of the $5,000,000 threshold of CAFA.  The

properties located in the Affected Area have a combined assessed value of $7,722,100.

Even excluding from the calculation the five persons whom the Court has excluded from

the putative class, would not significantly reduce the value.  Thus, because damages

under Florida law for each putative class member could equal the full value of his or her

particular parcel of property, and the combined assessed value of the properties in the

Affected Area is at least $7,722,100, there is little question that the amount in

controversy for purposes of CAFA have been satisfied. This conclusion also does not

take into account that the amount of attorney's fees and the value of the claims for

injunctive relief also could be factored into the calculus of determining the amount in

controversy.[10]

Accordingly, for all of these reasons, the Court concludes that the Koppers Defendants have met their burden of demonstrating by a preponderance of the evidence that the amount in controversy in this action is greater than $5,000,000, the amount required to remove a case under CAFA.[11]

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' Motion To Remand To State Court (Doc. 30) be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida this 6th day of June, 2011.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[10] The Koppers Defendants also point to the references in the Class Action Complaint concerning the adverse health effects resulting from Defendants' activities on the Koppers Site in arguing that Plaintiffs have brought claims for personal injuries caused by the discharge of chemical pollutants from the Koppers Site.  While there are references in the Class Action Complaint about health risks the Plaintiffs have not included any claims for personal injuries or medical monitoring costs and, therefore, there is no need to include these damages in the calculation of the amount in controversy.

[11] As an alternative grounds for removal the Koppers Defendants also contend  that McClellan, a Florida corporation, was fraudulently joined in this action by Plaintiffs in order to defeat diversity jurisdiction.  (Doc. 39 p. 16.)   Because the Court has determined that the removal of this action by the Koppers Defendants was proper under CAFA, the Court need not reach the issue of whether McClellan was fraudulently joined in this action.