**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| LISA LEE-BOLTON and RICHARD BOLTON, on behalf of themselves and all others similarly situated, and ROY GEIERSBACH on behalf of himself, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:10-cv-253-SPM-GRJ |
| KOPPERS INC., f/k/a KOPPERS INDUSTRIES, INC., BEAZER EAST, INC., f/k/a KOPPERS COMPANY, INC., KOPPERS HOLDINGS, INC., HEIDELBERG CEMENT AG, MCCLELLAN LOGGING, INC., and UNNAMED TRUCKING COMPANIES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS KOPPERS INC., BEAZER EAST, INC., AND KOPPERS
HOLDINGS, INC.'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO
MAGISTRATE'S REPORT AND RECOMMENDATION**

Defendants Koppers, Inc., Beazer East, Inc. and Koppers Holdings, Inc. (together, "Defendants"), hereby respond to Plaintiffs' Objections to Magistrate Judge Jones' Report and Recommendation denying Plaintiffs' Motion to Remand (Dkt. No. 64).

## INTRODUCTION

Plaintiffs have filed this putative class action lawsuit on behalf of a proposed class of owners of property in the neighborhood bordering a Superfund site (the "Site") in Gainesville, Florida. Plaintiffs allege that they and their properties have been exposed to "toxic," "dangerous" and "hazardous" substances emitted from the Site. Plaintiffs seek

damages for diminished property value, loss of use and enjoyment of property, stigma and increased risk of adverse health effects.  Compl. (Dkt. No. 1-1), ¶ 38.

Plaintiffs initially filed their Complaint in state court on November 18, 2010. Defendants timely removed this action, asserting that this Court has jurisdiction either pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), or, alternatively, because diversity of citizenship exists under 28 U.S.C. § 1332(a). Plaintiffs moved to remand this action to state court.  (Dkt. No. 30).

On June 6, 2011, Magistrate Judge Jones issued a Report and Recommendation (the "Report") concluding that Plaintiffs' Motion to Remand should be denied.  (Dkt. No. 58).  Specifically, Magistrate Judge Jones found that Defendants had met their burden in demonstrating that this Court has jurisdiction under CAFA, as Plaintiffs' proposed class includes at least 100 members and the total aggregate amount in controversy exceeds $5 million.

On August 5, 2011, Plaintiffs filed their Objections to the Magistrate Judge's Report. (Dkt. No. 64).  Plaintiffs' Objections, which are little more than a rehashing of their previous arguments already rejected by the Magistrate Judge, are unsupported by Florida or federal law and provide no legitimate basis for Plaintiffs to evade federal jurisdiction.   For the reasons set forth below, this Court should overrule Plaintiffs' objections, adopt Magistrate Judge Jones' Report in full, and deny Plaintiffs' Motion to Remand.

## ARGUMENT

**I.      Standard of Review**

**A.      This Court Should Review the Report and Recommendation Under a Clearly Erroneous or Contrary to Law Standard.**

A district court's review of a magistrate judge's determination is governed by both 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  Depending on the nature and type of matter being determined by the magistrate judge, the district court may undertake a *de novo* review or, alternatively, may merely be called upon to determine whether the magistrate judge's conclusion is clearly erroneous or contrary to law. *Compare* 28 U.S.C. § 636(b)(1)(A) *with* (b)(1)(C); *compare* Fed. R. Civ. P. 72(a) *with* (b).

Citing Rule 72(b)(2) and (b)(3), Plaintiffs urge this Court to review the Report and Recommendation under a *de novo* standard. Pls.' Objections (Dkt. No. 64), 2. However, because a motion to remand is not a "dispositive" motion, the Magistrate Judge's determination is subject to review under a clearly erroneous or contrary to law standard, as provided in Rule 72(a).

There is a split of authority regarding whether a motion to remand is a "dispositive" or "non-dispositive" motion within the context of Rule 72.  The Eleventh Circuit has not addressed this issue.  However, at least two district courts in the Eleventh Circuit have concluded that motions to remand address non-dispositive issues and, therefore, are subject to a clearly erroneous or contrary to law review by the district court. *See Johnson v. Wyeth*, 313 F. Supp. 2d 1272 (N.D. Ala. 2004); *Franklin v. City of Homewood*, No. 07-TMP-006-S, 2007 WL 1804411 (N.D. Ala. 2007).  While no Florida

federal district courts have squarely confronted the issue, in at least one instance, the Middle District of Florida has impliedly adopted the reasoning set forth in *Johnson*. In *Siewak v. AmSouth Bank*, No. 8:06-CV-927-SCB-EAJ, 2006 WL 3391222, at *1 n. 2 (M.D. Fla. Nov. 22, 2006), a magistrate judge entered an order – rather than a report and recommendation – denying a motion to remand and cited *Johnson* as authority to do so. Numerous other district courts have similarly concluded that a motion to remand is not "dispositive" but, rather, is among those pretrial matters within a magistrate judge's "hear and determine" authority under 28 U.S.C. § 636(b)(1)(A).[1]

This Court should adopt the persuasive reasoning of the majority of district courts, and endorsed by the only district courts in the Eleventh Circuit to consider the issue, and review the Report and Recommendation under a clearly erroneous or contrary to law standard. First, the plain language of § 636(b)(1)(A) does not list motions to remand among those pretrial matters <u>not</u> entrusted to magistrate judges. "If Congress had wanted to place remand of removed cases beyond the 'hear and determine' authority of magistrate judges, it could, should and would have listed it as one of the matters

---

[1] *E.g. N. Jersey Savings & Loan Assn. v. Dielity & Deposit Co. of Maryland*, 125 F.R.D 96 (D. N.J. 1988); *Holt v. Tonawanda Coke Corp.*, 802 F. Supp. 866, 868 (W.D. N.Y. 1991) ("a motion to remand is not dispositive"); *Vaquillas Ranch Co., Ltd. v. Texaco Exploration & Prod., Inc.*, 844 F. Supp. 1156, 1163 (S.D. Tex. 1994) ("In view of the finding above that a motion to remand is nondispositive, the standard to be applied…to this Court's review of the magistrate judge's Memorandum and Order denying remand is one of clearly erroneous or contrary to law."); *Wachovia Bank, N.A. v. Deutshe Bank Trust Co. Americas*, 397 F. Supp. 2d 698, 702 (W.D. N.C. 2005) ("a magistrate judge may hear and determine a motion to remand, subject only to 'clearly erroneous or contrary to law' review"); *Shareholders of R.E. Heidt Const. Co., Inc. v. Price*, 2:10 CV1260, 2011 WL 1841251, at *2 (W.D. La. May 13, 2011) ("a motion to remand is a non-dispositive matter, and this Court will apply a deferential standard of review").

Other Courts have held that determinations of motions to remand are dispositive issues. *E.g. Vogul v. U.S. Office Prods. Co.*, 258 F.3d 509, 515 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 146 (3rd Cir. 1998).

expressly excluded from that authority." *Johnson*, 313 F. Supp. 2d at 1273; *see also Franklin*, 2007 WL 1804411 at *3. Therefore, in the § 636 framework, a motion to remand falls under § 636(b)(1)(A) along with other "pretrial matters" which a magistrate judge may rule on and a district court reviews under a clearly erroneous or contrary to law standard.

Second, under the plain language of Rule 72, a motion to remand is a "non-dispositive" motion because it does not "bring[ ] about a final determination of a party's claims or defenses." *Franklin*, 2007 WL 1804411, at *3; *see also Wachovia Bank*, 397 F. Supp. 2d at 702. Because a decision on a motion to remand "decides only the question of whether there is a proper basis for federal jurisdiction to support removal, and neither reaches nor determines the merits of a plaintiff's claims or a defendant's defenses or counterclaims," ruling on a motion to remand is non-dispositive within the meaning of Rule 72. *Holt*, 802 F. Supp. at 868. As such, a magistrate judge's determination on a motion to remand falls within the category of matters reviewed for clear error, rather than under a *de novo* standard.

Finally, considering motions to remand as non-dispositive matters furthers the practical policy of "vesting magistrate judges with sufficient authority to enable them to assist effectively in managing the heavy caseload borne by the district courts." *Johnson*, 313 F. Supp. at 1274 (referencing *Roell v. Withrow*, 538 U.S. 580 (2003)). So long as a magistrate judge's order on a motion to remand allows the parties to seek review by the

5

district court, "there is certainly no constitutional infirmity, much less any policy reason, precluding the vesting of remand authority in magistrate judges." *Id.* at 1273.[2]

Therefore, this Court should review the Magistrate Judge's decision to deny Plaintiffs' Motion to Remand under a clearly erroneous or contrary to law standard. Under that standard, the Magistrate Judge's determination should only be disturbed if the Magistrate Judge "faile[d] to apply or misapplie[d] relevant statutes, case law or rules of procedure." *S.E.C. v. Kramer*, 8:09-CV-455-SCB-TBM, 2011 WL 1230808, at *4 (M.D. Fla. Apr. 1, 2011) (citing *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y.2000)). Under a clearly erroneous standard, this Court should affirm the Magistrate Judge's order "unless the court has a definite and firm conviction that error occurred." *Smoliak v. Greyhound Lines, Inc.*, No. 5:04cv245PSPMAK, 2005 WL 343742, at *1 (N.D. Fla. Oct. 7, 2005); *see also U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed"). Applying this deferential standard of review, this Court should affirm and adopt the Report and Recommendation in full.

**B. Even under a *de novo* standard, the Court's review is not unlimited.**

Even if the Court were to view Plaintiffs' motion to remand as "dispositive" and therefore subject the Report and Recommendation to *de novo* review under Rule 72(b)(3), only those portions of the Report to which Plaintiffs <u>specifically</u> object are

---

[2] Notably, in at least two of the circuit court cases rejecting remand authority for magistrate judges, "no provision had been made (or it was ignored) for securing the right of the parties to seek a review by a district judge." *Johnson*, 313 F. Supp. 2d at 1273 n. 1 (citing *In re U.S. Healthcare*, 159 F. 3d 142, and *Vogel*, 258 F.3d 509).

subject to *de novo* review. Portions to which no specific objections are made are reviewed under a clearly erroneous standard. *Liberty Am. Ins. Group, Inc. v. WestPoint Underwrites, LLC*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). In addition, "[f]rivolous, conclusive, or general objections need not be considered by the district court." *Leatherwood v. Anna's Linens Co.*, 384 Fed. Appx. 853, 857 (11th Cir. 2010) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

Further, even in conducting a *de novo* review, the district court is not required to entertain arguments that were not presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). In *Williams*, the Eleventh Circuit explicitly recognized that it would be "fundamentally unfair" and would "frustrate the purpose of the Magistrates Act" if a party was permitted to present new arguments and evidence to the district court which it did not submit to the magistrate judge. *Id.* at 1292. Since *Williams*, numerous federal district courts in Florida have declined to consider arguments and evidence raised for the first time in a party's objections to a magistrate judge's report and recommendation.[3]

---

[3] *See Fashaw v. Astrue*, Case No. 8:10-cv-473-JDW-AEP, 2011 WL 1211455, at **1, 2 (M.D. Fla. Mar. 31, 2011) (citing *Williams* and declining to consider arguments raised for the first time in a party's objections to the magistrate judge's report and recommendation); *Minsurg Int'l, Inc. v. Frontier Devices, Inc*, 2011 WL 678561, at *3 (M.D. Fla. Feb. 7, 2011) (declining to consider witness declaration and exhibits not presented to magistrate judge); *Medi-Weightloss Franchising USA, LLC,* No. 8:09-cv-2421-SCB-MAP, 2010 WL 1837764, at *2 (M.D. Fla. Apr. 29, 2010) (consideration of new arguments would be "an extraordinary waste of judicial resources"); *Lorentz v. Sunshine Health Prods., Inc.,* No. 09-61529-CIV, 2010 WL 3733985, at *1 (S.D. Fla. Sept. 23, 2010) ("exercis[ing] its discretion not to consider" an expert report submitted after the Magistrate Judge issued his report and recommendation); *Maale v. Kirchgessner*, 08-80131-CIV, 2011 WL 1549058, *4 (S.D. Fla. Apr. 22, 2011) (declining to consider an argument "that should have, and could have, been previously raised."); *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1312 (S.D. Fla. 2010) (declining to consider new arguments because "the parties were afforded ample opportunity to make their arguments before [the magistrate judge].")

This Court should likewise exercise its discretion and decline to consider any arguments or purported "evidence" that Plaintiffs attempt to present, for the first time, to this Court. Therefore, even if this Court were to engage in a *de novo* review of the Report and Recommendation, the result should be the same – the Report and Recommendation should be adopted in full and Plaintiffs' Motion to Remand should be denied.

## II.   The Magistrate Properly Found That This Court Has Jurisdiction under CAFA

CAFA was intended to expand federal court jurisdiction over class actions, and it is designed "to prevent plaintiffs from evading federal jurisdiction by hiding the true nature of their case." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (quoting S. Rep. No. 109-14, at 9 (2005)); *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 681 (7th Cir. 2006). "Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 34 (2005). In order for this Court to have jurisdiction over this action under CAFA, three jurisdictional requirements must be met: (1) there must be 100 or more putative class members; (2) at least some of the individual plaintiffs must have a different citizenship from some defendants; and (3) the claims of the individual plaintiffs must exceed $5 million in the aggregate. *See* 28 U.S.C. § 1332(d).

Magistrate Judge Jones properly concluded that this Court has jurisdiction under CAFA, specifically finding that the Defendants met their burden of "demonstrating that it is more likely than not that the number of proposed class members under Plaintiffs' class definition is not less than 100" and "demonstrating by a preponderance of the evidence

that the amount in controversy in this action is greater than $5,000,000." R&R (Dkt. No. 58), 16, 25.  Under a clearly erroneous standard of review, this Court should adopt the Report and Recommendation in full because Plaintiffs' objections patently fail to demonstrate that the Magistrate Judge either failed to apply or misapplied any relevant law and are insufficient to raise even a specter of the "definite and firm conviction" of error which would be required to justify this Court's rejection of the Magistrate Judge's determination.  *See Smoliak*, 2005 WL 343742, at *1.  Indeed, even if this Court were to apply a *de novo* standard of review, Plaintiffs' Objections should still be overruled because the Magistrate Judge's conclusion that all of CAFA's jurisdictional requirements were satisfied is fully supported by the record.   The Magistrate Judge properly determined that the Defendants had met their burden of demonstrating that jurisdiction exists under CAFA and, therefore, that Plaintiff's Motion to Remand should be denied.

### A.      Plaintiffs' Proposed Class Includes More Than 100 Members

When Plaintiffs filed their Complaint, they and they alone were the masters of their proposed class definition.  Plaintiffs chose to define their proposed class as follows:

> All persons and legal entities that appear on a recorded deed as the owners, as of November 18, 2010, of property that:
>> a.      is located in the Affected Area;
>> b.      is designated as available for residential use according to the records of the Alachua County Property Appraiser; and
>> c.      is or has been affected by those toxic and dangerous chemicals and/or hazardous substances used at the Koppers Site.

Compl. (Dkt. 1-1), ¶ 39.  Plaintiffs' proposed class definition also expressly excluded six categories of persons, including the following:

> All persons and entities who timely opt out of this proceeding; [and]

9

> All persons who have signed a retainer agreement with an attorney other than the undersigned counsel to maintain an individual action and/or a class action based in whole or in part on the claims contained in this complaint [.]

Compl. (Dkt. 1-1), ¶ 40(B), (E).

Based on the plain language of Plaintiffs' class definition, the Magistrate Judge found that Plaintiffs' proposed class included at least 109 putative class members, more than enough to satisfy CAFA's jurisdictional requirement of a 100-member class.  Just as they did in their Motion to Remand, Plaintiffs now assert a litany of unsupportable arguments seeking to exclude 14 individuals or entities from that list.   Plaintiffs' arguments are inconsistent with the plain language of their class definition and improperly rely on either post-removal events or events of which Plaintiffs have presented no competent, admissible evidence in an attempt to defeat this Court's jurisdiction.  As discussed in more detail below, all of Plaintiffs' arguments on this issue fail.

### 1.  Property "Available for Residential Use": J&J Real Estate, Ltd. and Santa Fe Community College

Plaintiffs object to the inclusion of J&J Real Estate, Ltd. and Santa Fe College Foundation, Inc. as potential class members because the properties owned by these entities, while zoned residential, are not currently being used for residential purposes. Plaintiffs suggest that "the portion of the class definition relating to the use of the properties may have seemed ambiguous to the Magistrate" and urge this Court to resolve any "doubt or uncertainty" in favor of remand.  Pl.'s Objections (Dkt. No. 64), 3.

However, the Report and Recommendation reveals that the Magistrate Judge correctly found Plaintiffs' class definition to be anything but ambiguous.

Plaintiffs specifically defined the class to include properties that are "designated as *available* for residential use according to the records of the Alachua County Property Appraiser." Compl. (Doc. 1-1), ¶ 39 (emphasis added). Based on the plain language of Plaintiffs' definition, the Magistrate Judge found that "there is no requirement…that a property must be used for residential purposes, but rather only that each property must be 'designated as available for residential use.'" R&R (Dkt. No. 58), 8. The Magistrate Judge expressed no ambiguity on this point; therefore, there is no "doubt or uncertainty" inherent in his conclusions to resolve in favor of remand, as claimed by Plaintiffs.

Had Plaintiffs intended to limit the proposed class to only those properties which are both designated as available for residential use <u>and</u> are currently being used for residential purposes, they could have done so. They did not. They cannot now seek to amend their class definition, post-removal, to evade federal jurisdiction. The Magistrate properly saw through Plaintiffs' tactics and recognized that both J&J Real Estate Ltd. and Santa Fe College Foundation, Inc. are properly counted as putative class members.

### 2.     "Opt-Outs": Dale Turlington and Susan Turlington

Plaintiffs also object to the Magistrate Judge's determination that Dale Turlington and Susan Turlington should be counted as potential members of the putative class. Citing no case law in support of their argument, Plaintiffs claim that merely because these individuals submitted affidavits indicating that "at some point before November 18, 2010," they each "opted out of being part of the class action now known as the Lee-

Bolton class action," they should not be counted among the potential members of the putative class.  *See* Affs. of S. Turlington, D. Turlington (Dkt. Nos. 51-1, 51-2), ¶ 4. However, the Magistrate Judge correctly found that, as a matter of law (and common sense), a potential class member cannot validly "opt out" until after receiving the required notice under Rule 23.  R&R (Dkt. No. 58), 11 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202-03 (11th Cir. 1985)); *see also J.W.T., Inc. v. Joseph E. Seagram & Sons, Inc.*, 63 F.R.D. 139, 142 n.8 (N.D. Ill. 1974) (stating it is "inappropriate" to show lack of interest among putative class members before certification because such a showing "would better be raised at a later time, after potential class members had been afforded an opportunity to 'opt out'"); *Matarazzo v. Friendly Ice Cream Corp.*, 62 F.R.D. 65, 69 n.4 (E.D.N.Y. 1974) (rejecting statements of non-participation signed by putative class members and noting the "statements do not conform to the requirement of Rule 23 'opt out' notice").

While Plaintiffs attempt to factually distinguish *Kleiner*, they fail to provide any case law in support of their argument that potential class members can effectively "opt out" of a putative class action before that class is even certified, let alone before they receive the court-approved class notice.  Rather, Plaintiffs argue based on the general proposition, without any legal support, that "one cannot be forced to be a plaintiff in a lawsuit" and that "Dale and Susan Turlington have every right to distance themselves from this action if they see fit to do so."  Pls.' Objections (Dkt. No. 64), 4.

By counting them among the potential members of the putative class for purposes of determining jurisdiction, this Court is not "forcing" the Turlingtons to be plaintiffs in

12

this action.  If this lawsuit survives Defendants' Motions to Dismiss and Plaintiffs' proposed class is certified, the Turlingtons are free to then opt out of the class.  However, their intent to do so is not germane to the issue of this Court's jurisdiction.  "It is irrelevant that plaintiffs predict that less than 100 people actually will join their lawsuit;" rather, the correct inquiry is "whether 100 or more people fall within the definition of the class proposed by the plaintiffs in their complaint."  *Irish v. BNSF Ry. Co.*,  No. 08-cv-469-slc, 2009 WL 276519, at *13 (W.D. Wis. Feb. 4, 2009) (rejecting plaintiffs arguments for reduction of class size and observing "[t]he proposed class hasn't even been certified yet, so no one has been required to make a final decision whether s/he wants to get in or stay out.").

Notably, Dale and Susan Turlington easily could have placed themselves outside of Plaintiffs' class definition entirely by providing Defendants with "valid releases releasing the Defendants from claims asserted in [the] complaint."  *See* Comp. (Dkt. No. 1-1), ¶ 39 (excluding persons who have given valid releases from the class definition). They did not do so.  Therefore, the Magistrate Judge correctly concluded that Dale and Susan Turlington should be included among the potential members of the putative class.

### 3. Property Held in Trust: Carolyn H. McPherson and Deborah H. Darsey

Plaintiffs object to the inclusion of Carolyn H. McPherson and Deborah H. Darsey, the trustees of a property held in trust, as members of the potential class. However, as the Magistrate Judge observed and Plaintiffs concede, Florida law is well-settled that legal title to property held in trust is held by the trustee or trustees, while beneficial title is held by the beneficiary or beneficiaries.  *Hansen v. Bothe*, 10 So. 2d

213, 216 (Fla. Dist. Ct. App. 2009); *see also Webster v. St. Petersburg Federal Sav. & Loan Ass'n*, 20 So. 2d 400 (Fla. 1945); *Miller v. Kresser*, 34 So. 3d 172, 177 (Fla. Dist. Ct. App. 2010).

Unable to avoid the conclusion that legal title to the property at issue resides in the trustees (rather than in the trust, as Plaintiffs previously claimed), Plaintiffs now argue that the "bifurcation of title means that neither the trustees <u>nor</u> the beneficiaries are the 'owners' as contemplated by the class definition." Pls.' Objections (Dkt. No. 64), 5 (emphasis added). This argument is nonsensical. First, it ignores the plain language of Plaintiffs' proposed class definition, which includes "[a]ll persons or legal entities that appear on a recorded deed as the owners," regardless of the nature of the ownership interest. Moreover, Plaintiff's argument would produce the absurd result of arbitrarily excluding from this action every legal and beneficial owner of any property held in trust.

Plaintiffs' fall back argument – that only one, but not both, of the Trustees should be counted among the potential class members – is equally unsupportable. There is no legal or logical basis for recognizing the property interest of one trustee but not the other. For all of these reasons, both Carolyn H. McPherson and Deborah H. Darsey are properly included as potential class members.

### 4. Present and Future Interests: Kenneth Jankura and Joseph Jankura

Rehashing the same arguments made in their Motion to Remand, Plaintiffs object to the Magistrate's inclusion of brothers Kenneth and Joseph Jankura in the putative class. Plaintiffs again argue that because – in Plaintiffs' view – the Jankuras' purported

remainder interests in the property were "improperly conveyed," the Jankuras are not "owners" of the property within the meaning of the class definition.

However, Plaintiffs' argument is, again, beside the point.  As the Magistrate Judge noted, "both brothers specifically appear in the recorded deed as having an interest in the property, which would satisfy the class definition."  R&R (Dkt. No. 58), 12. Plaintiffs could have limited their class definition to only those persons with a <u>present</u> ownership in property in the Affected Area but they did not; rather the proposed class definition more broadly encompasses all individuals who "appear in a recorded deed as the owners."  Further, whether a challenge to their ownership interest could be mounted by either their brother (Paul Jankura) or another party is irrelevant – all that matters under the plain language of Plaintiffs' proposed class definition is that Kenneth's and Joseph's names appear on the recorded deed as owners, which they do.  The Magistrate Judge properly included both Kenneth and Joseph Jankura among the potential class members.

### 5.    Retainer Agreements with Other Counsel: Carla Megarejo

Plaintiffs object to the Magistrate's inclusion of Carla Melgarejo in the putative class because Ms. Melgarejo has retained an attorney and has filed a separate lawsuit which Plaintiffs assert is "based in part on claims contained in the Lee-Bolton Complaint."  Pls.' Objections (Dkt. No. 64), 6-7.  Plaintiffs even attach the Complaint filed by Ms. Melgarejo in support of their argument.  *See id.* at Ex. A (the "Melgarejo Complaint"). Plaintiffs' argument for Ms. Melgarejo's exclusion fails on multiple fronts.

First, because Plaintiffs' evidence of Ms. Melgarejo's separate lawsuit was not presented to the Magistrate, this Court should disregard it. *See Williams*, 557 F.3d at 1292.

Further, while Plaintiffs have now presented evidence of Ms. Melgarejo's lawsuit, Plaintiffs still have presented no evidence that Ms. Melgarejo had signed a retainer agreement with her attorneys, Jennifer Springfield and Emory Springfield, <u>at the time of removal</u>. *See  Poore v. American-Amicable Life Ins. Co.*, 218 F.3d 1287, 1290-91 (11th Cir. 2000), overruled in part on other grounds, *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 640-41 (11th Cir. 2007) ("The district court must determine whether it had subject matter jurisdiction at the time of removal.  That is, events occurring after removal…do not oust the district court's jurisdiction."); *The Burt Co. v. Clarendon Nat'l Ins. Co.*, 385 Fed. Appx. 892, 894 (11th Cir. 2010) ("events occurring after removal…do not divest the district court of jurisdiction").  At most, Plaintiffs have presented evidence that, when the Melgarejo Complaint was filed on April 26, 2011, Ms. Melgarejo had signed a retainer agreement with another attorney.  Because the Melgarejo Complaint was filed over four months <u>after</u> Defendants removed this action, this fact is irrelevant to determining this Court's jurisdiction.

Finally, even if Ms. Melgarejo had signed a retainer agreement with another attorney at the time of removal (an assumption for which there is no evidence in the record), the claims asserted in the Melgarejo Complaint are not "based in whole or in part on the claims contained in [Plaintiffs'] complaint," as would be required to exclude Ms. Melgarejo from the putative class. Ms. Melgarejo has sued her realtor and the former

16

owners of her property, under a variety of legal theories,[4] all arising out of the defendants' alleged failure to disclose at purchase "the presence and close proximity…of the neighboring Cabot/Koppers Superfund Site.". *See e.g.* Ex. A (Melgarejo Complaint), at ¶ 21.  None of the defendants in this action are named as defendants in the Melgarejo Complaint.  In addition, none of the claims at issue in this action (negligence, violations of the Water Quality Assurance Act, strict liability, nuisance, trespass, and injunctive and equitable relief) are asserted in the Melgarejo Complaint.  In fact Ms. Melgarejo even fails to allege in her Complaint that her property is contaminated.   Rather, Ms. Melgarejo's entire lawsuit is based upon the named defendants' alleged failure to disclose the mere proximity of Ms. Melgarejo's property to the "Cabot/Koppers Superfund Site." Because the claims asserted in the Melgarejo Complaint are not "based in whole or in part on the claims" being asserted in this action, the existence of that lawsuit is insufficient to exclude Ms. Melgarejo from the putative class.   Accordingly, the Magistrate correctly determined that Ms. Melgarejo should be included in the putative class.

### 6.   Retainer Agreements with Other Counsel: James Frank O'Steen, Selena Pak Patterson and Erik Hushelpeck

Plaintiffs also object to the inclusion of James Frank O'Steen, Selena Pak Patterson and Erik Hushelpeck in the putative class, baldly claiming that "[t]hose persons have all signed retainer agreement with the firm Parker Waichman Alonso LLP to maintain an action based in part on the claims contained in the Lee-Bolton Complaint."

---

[4] The Melgarejo complaint purports to state causes of action for "*Johnson* Nondisclosure," "Fraudulent Nondisclosure (Intentional Concealment)," "Fraudulent Misrepresentation (Fraud in the Inducement)," "Negligent Misrepresentation," "Innocent Misrepresentation," "Breach Of Statutory Duty" under section 475.278, Florida Statutes, and "Negligent Hiring and Supervision."

Pls.' Objections (Dkt. No. 64), 7. However, Plaintiffs again fail to offer any competent, admissible evidence showing that any of these individuals have actually signed a retainer agreement with other counsel, let alone that the agreement had been signed pre-removal, as would be required to have any effect on this Court's jurisdiction. Rather, Plaintiffs belatedly request either a "de novo evidentiary hearing" or "leave to file supplemental documentation" in order to present such evidence. *Id.*

First, because no such evidence was presented to the Magistrate Judge, this Court should decline to consider any of Plaintiffs' arguments on this point. *See, Williams*, 557 F.3d at 1292. Further, because Plaintiffs failed to request an evidentiary hearing before the Magistrate, this Court should not entertain their request now. *See S.E.C. v. Aerokinetic Energy Corp.*, 8:08-CV-1409-JDW-TGW, 2010 WL 5174509, *3 (M.D. Fla. Dec. 15, 2010) (citing *Williams* and declining to consider defendants' argument that they were entitled to an evidentiary hearing, where they had not previously objected to the lack of an evidentiary hearing before the magistrate judge). Plaintiffs had ample opportunity to present documentary evidence or, alternatively, to request an evidentiary hearing before the Magistrate Judge and they did not. Plaintiffs cannot now object to the Magistrate Judge's determination that these individuals should be included in the putative class on the basis of evidence they have never previously presented.

### 7. Retainer Agreements with Other Counsel: Karen Scott, Charles Mills and Danielle Devincenzo King

Just as they did in their Motion to Remand, Plaintiffs claim that Karen Scott, Charles Mills and Danielle Devincenzo King should be excluded from the list of potential class members because they have signed retainer agreements with other counsel for the

purpose of pursuing a property tax reassessment allegedly based on the diminished value of their properties caused by Defendants.  To support this argument, Plaintiffs attached to their Objections various documents related to these individuals' petitions for property tax reassessment as presented to the Alachua County Value Adjustment Board.

First, because the documents attached to Plaintiffs' Objections were not presented to the Magistrate, the Court should disregard them.  *See* Williams, 557 F.3d at 1292. Moreover, even if these documents are considered, Plaintiffs still have not presented any competent, admissible evidence that these individuals have actually signed retainer agreements with other counsel or that those agreements were signed pre-removal.  This Court's inquiry can end here.

However, as the Magistrate Judge recognized, even if Plaintiffs had presented evidence of retainer agreements signed pre-removal, their arguments still fail.  First, Plaintiffs' class definition only excludes persons who have retained other counsel "to maintain an individual action and/or a class action."  The Magistrate Judge concluded that a property tax reassessment is not an "action" within the meaning of the class definition.  Plaintiffs cite no authority to the contrary.  Further, Plaintiffs' class definition only excludes persons who have signed retainer agreements to maintain actions "based in whole or in part on the claims contained in [Plaintiffs'] complaint."  Therefore, even if a petition for tax reassessment was an "action," it would still need to be based, at least in part, on the claims asserted in Plaintiffs' Complaint to exclude these individuals from the proposed class.  That is not the case here.  As properly identified by the Magistrate Judge, the relief sought via a tax assessment "action" is entirely distinct from the relief sought

by the Plaintiffs in this action.  Accordingly, the Magistrate Judge properly included Karen Scott, Charles Mills and Danielle Devincenzo King among the proposed class members and correctly concluded that the total number of potential class members is greater than 100.

### B.      The Aggregate Amount in Controversy Exceeds $5 million.

Plaintiffs also "object to the Magistrate Judge's conclusion that Defendants have met their burden to demonstrate that the amount in controversy in this action exceeds the $5 million threshold of CAFA." Pls.' Objections (Dkt. No. 64), 8-9.  The sole argument in support of this claim is that Defendants somehow "changed directions" in their argument between their Notice of Removal and their Response to Plaintiffs' Motion to Remand. *Id.*[5]

Notably, however, plaintiffs do not argue that the Magistrate Judge's ultimate conclusion – that the total amount in controversy exceeds $5 million – was wrong. Additionally, Plaintiffs cite no case law to support any potential argument that the Magistrate Judge's analysis in reaching that conclusion was flawed in any way. Plaintiffs

---

[5] Plaintiffs' claim is factually incorrect.  Defendants have always argued that the total amount in controversy exceeds $5 million because the total value of Plaintiffs' claims (including claims for property damage, personal injury, attorneys' fees and injunctive relief) exceeds that amount.  In the Notice of Removal, Defendants argued that Plaintiffs' claims that their properties have "significantly" diminished in value could be interpreted as resulting in a 20-30% reduction in value – or, approximately $25,000 in exclusively property-related damages per class member.  But even under that argument, coupled with the potential value of the class members other claims, the aggregate amount in controversy still exceeded $5 million.  In response to the Motion to Remand, Defendants made the exact same arguments except that, relying in part on *Irish v. BNSF Railway Co.,* they valued Plaintiffs' property damage claims at the full value of all potential class members' properties, rather than applying any discount based on Plaintiffs' allegations of "significant" decline in value.  As explained in more detail below, the Magistrate Judge ultimately agreed that the maximum potential value of each class member's property claim should be set, for jurisdictional purposes, at the full value of the property.

have failed to offer any specific objections to the Magistrate Judge's findings regarding the amount in controversy.

In any event, the Magistrate Judge correctly concluded that the total amount in controversy in this case far exceeds CAFA's $5 million threshold.  Relying on property records maintained by the Alachua County Property Appraiser, the Magistrate Judge first determined that the baseline value of all property in the Affected Area (as defined by Plaintiffs) is approximately $7.7 million.  Plaintiffs do not object to this finding of fact. The Magistrate Judge also found that, under Florida law, the absolute maximum value of each putative class member's claim for damages is the full value of the property.  *Davey v. Compressor Co. v. City of Delray Beach*, 639 So. 2d 595, 596 (Fla. 1994); *Samples v. Conoco*, 165 F. Supp. 2d 1303, 1317 (N.D. Fla. 2001).    Plaintiffs do not object to this statement of Florida law.  Accordingly, the Magistrate Judge properly concluded that the maximum aggregate amount in controversy in this action is the full value of all of the potential class members' properties – or, approximately $7.7 million.  In so doing, the Magistrate Judge used the same analytical framework endorsed in *Irish v. BNSF Railway Co.*.  *See Irish*, 2009 WL 276519, at *1 (finding CAFA's amount in controversy requirement satisfied where the aggregate assessed value of the real property at issue was approximately $9 million, even though the plaintiffs in that action had not expressly demanded damages in excess of $5 million).  Plaintiffs fail to challenge either the method the Magistrate used to evaluate the amount in controversy or his ultimate conclusion. Rather, Plaintiffs merely assert that because "Defendants did not meet their burden when

they removed the case,… removal was and is improper." Pls.' Objections (Dkt. No. 64), 9.

Further, Plaintiffs have no response to the Magistrate Judge's finding that attorneys' fees should be included in the calculation of the total amount in controversy, as such an award is available under the Water Quality Assurance Act. *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000) ("when a statutory cause of action entitled a party to recover reasonable attorney fees, the amount in controversy includes consideration of the amount of those fees"). Plaintiffs also do not contest the Magistrate Judge's conclusion that the amount in controversy as to Plaintiffs' claims for equitable and injunctive relief – valued as equal to the aggregate value of each potential class member's property – also exceeds CAFA's $5 million threshold.

Plaintiffs have raised no meritorious objections whatsoever to the Magistrate Judge's conclusions with respect to the amount in controversy. Indeed, the total amount in controversy in this action exceeds CAFA's threshold by at least $2.7 million dollars. Accordingly, the Magistrate Judge properly determined that CAFA's amount in controversy requirement is satisfied and that this Court has jurisdiction over this action under CAFA.

III.   **The Magistrate Judge Did Not Reach Defendants' Alternate Basis for Removal**

In their Notice of Removal, Defendants presented an alternative basis for removal in addition to CAFA – specifically, that this Court has diversity jurisdiction over this action under 28 U.S.C.§§ 1332(a) and 1367(a) because there is complete diversity between Plaintiffs and all non-fraudulently joined Defendants, and at least one Plaintiff's

alleged claims involve an amount-in-controversy that exceeds $75,000.  Having found that this Court has jurisdiction under CAFA, the Magistrate Judge did not reach the issue of whether McClellan Logging, Inc. (the sole non-diverse defendant) had been fraudulently joined.

Defendants respectfully submit that, for all of the reasons articulated by the Magistrate Judge and discussed above, jurisdiction exists under CAFA and, therefore, Plaintiffs' Motion to Remand should be denied.  However, if the Court were to reject the Magistrate Judge's conclusion that this case has been properly removed under CAFA, Defendants request that the matter be remanded to the Magistrate Judge for a determination of whether diversity jurisdiction exists in light of Plaintiffs' fraudulent joinder of McClellan Logging, Inc.

<u>**CONCLUSION**</u>

For the foregoing reasons, under either a clearly erroneous or *de novo* standard of review, the Court should overrule Plaintiffs' objections to the Report and Recommendation, adopt the Report and Recommendation in full, and deny Plaintiffs' Motion to Remand.

Date:   August 19, 2011                    Respectfully submitted,

                                           s/ Casey G. Reeder
                                           Benjamin H. Hill, III (FBN 094585)
                                           bhill@hwhlaw.com
                                           Dennis P. Waggoner (FBN 509426)
                                           dwaggoner@hwhlaw.com
                                           Casey G. Reeder       (FBN 041986)
                                           creeder@hwhlaw.com
                                           HILL, WARD & HENDERSON P.A.
                                           101 East Kennedy Blvd., Suite 3700
                                           P.O. Box 2231
                                           Tampa, FL 33602
                                           Phone: (813) 221-3900
                                           Fax: (813) 221-2900

**OF COUNSEL:**
Brent R. Austin (ILBN 6220501)
*Admitted to Northern District Bar 9/29/10*
David A. Kanter (ILBN 6187653)
*Admitted to Northern District Bar 9/30/10*
Paul K. Freeborn (ILBN 6277489)
*Admitted to Northern District Bar 10/28/10*
Megan C. Millirons (ILBN 6290249)
*Admitted to Northern District Bar 9/29/10*
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois  60606-1229
Telephone:  312-201-2000
Facsimile:  312-201-2555

                                           **ATTORNEYS FOR DEFENDANTS**
                                           **KOPPERS INC., BEAZER EAST, INC., and**
                                           **KOPPERS HOLDINGS, INC.**

24

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

s/ Casey G. Reeder

25