**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

| | |
|---|---|
| LISA LEE-BOLTON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:10-cv-253-MCR-GRJ |
| ) | |
| KOPPERS INC. f/k/a KOPPERS ) | |
| INDUSTRIES, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' RESPONSE TO FEBRUARY 1, 2016 LETTER TO COURT**

Pursuant to this Court's Order dated February 18, 2016 (Dkt. 879), Defendants respond to a letter dated February 1, 2016 from Plaintiffs' counsel, Peter Cambs, to the Court. The letter purports to correct Mr. Cambs's oral response to a question from the Court during his closing argument for the class and *Daubert* motions hearing held from January 11-22, 2016. Mr. Cambs refers to his discussion of samples taken by the Indoor Dust Committee and samples analyzed by Plaintiffs' expert, William Sawyer. Mr. Cambs states that he mistakenly informed the Court that he was talking about soil samples when he meant to refer to dust samples. The remainder of the letter extends beyond what could fairly be construed as a correction.

The Court has properly before it the pleadings, testimony (both live and through designations) and evidence necessary to decide the pending class and *Daubert* motions. Mr. Cambs's letter seeks improperly to characterize data from certain exhibits and re-hash arguments presented at the hearing. The exhibit cited by Mr. Cambs, though, establishes that the CALUX analysis includes both chlorinated and brominated dioxins, that the brominated dioxins did not come from the Cabot Koppers site, and that different sources may account for even the chlorinated dioxins found in the house dust that was sampled. Dr. Wade conceded this was true,

1

even for homes directly adjacent to the plant.  As all of the analysis upon which Plaintiffs rely, including Dr. Sawyer's single risk calculation, are based on CALUX numbers that have overestimated chlorinated dioxin readings by over 1000% (D-139.013), Plaintiffs' reliance on CALUX cannot justify any class determination.

To be clear, "background" refers to what the Indoor Dust Committee labeled as background.  D-125.022 displays the location of the homes from where these dust samples were taken.  D-125.022 also shows the boundaries of the proposed class.  Notably, some of the "background" dust samples are taken from homes within the proposed class boundaries.

Plaintiffs' letter cites Tables 2 and 3 from Plaintiffs' Exhibit 5, which are also found on pages D-87.030 and D-87.031.  D-87.015 states:  "This report does not, however, address whether the Koppers facility is the only or major source of dioxins in dust of nearby houses."  Dr. Wade conceded it was not.  The same dust samples from Tables 2 and 3 are also addressed in D 96.031-039. Table 3-2 (page D96.034) contains descriptive statistics for the samples.  This table reflects a maximum difference of 13.6 between dust taken from houses located in the area defined in the report as "background" and from houses located closer to the site and a median difference of 13.9.   Mr. Cambs, though, cites only a difference between the geometric means of each group of dust samples to support Plaintiffs' assertion that the Indoor Dust Committee found increasing levels of chlorinated dioxin levels near-site.  This assertion is contradicted by the data.  Table 3-1 (page D.96.033) addresses TCDD-TEQ load concentrations from background and near site.  Table 3-1 demonstrates that some samples from the background homes had higher concentrations than some samples taken from homes near the site.  At pages D-96.0033-34, the report further discusses that variability exists in the dust samples that are not related to soil or to Koppers or spatially correlated between adjacent homes or proximity to alternative sources of

chlorinated dioxins. Although the report acknowledges that near-site samples indicate some contribution from Koppers, no Plaintiffs' expert has determined that contribution. Finally, the report discusses homes with high concentrations unrelated to location, indicating alternative sources. Because some of these homes are within the proposed class boundaries, the data underscores the individualized questions of fact as to source that predominate and defeat class certification.

Mr. Cambs's letter also implicitly addresses Plaintiffs' reliance on CALUX data. This extends well beyond any purported correction as to whether Mr. Cambs was referring to soil or dust samples in his closing argument. The Court heard extensive testimony and has multiple exhibits in the record addressing the unreliability of CALUX for fingerprinting. Responding briefly, Defendants note that D-96 and the designated deposition excerpts from Dr. Cline discuss extensively the reliability of CALUX data. Plaintiffs' own fingerprinting expert, Dr. Wade, disclaimed the use of CALUX. Defendants also note that Dr. Uhler's testimony directly contradicts the implied assertion in Mr. Cambs's letter.

In conclusion, Plaintiffs' letter extends beyond what could fairly be construed as a correction, and the implied assertions in the letter are contradicted by evidence in the record. Plaintiffs did not establish that common proof exists to determine the sources of chlorinated dioxins in each home included the proposed class. CALUX is an unreliable methodology to determine whether the former wood treating site is the source of dioxins found in all houses included in the proposed class.

   Date:   March 3, 2016                        Respectfully submitted,

                                                         /s/ Cal R. Burnton

Benjamin H. Hill, III (FBN 094585)
Dennis P. Waggoner (FBN 509426)
HILL, WARD & HENDERSON P.A.
101 East Kennedy Blvd., Suite 3700
P.O. Box 2231
Tampa, FL 33602
Phone: (813) 221-3900
Fax: (813) 221-2900

and

Cal R. Burnton (ILBN 8186365)
*Admitted to Northern District Bar 5/12/14*
Steptoe & Johnson LLP
115 S. LaSalle, Suite 3100
Chicago, IL 60603
Phone: (312) 577-1300
Fax: (312) 577-1370

ATTORNEYS FOR BEAZER EAST, INC.
and KOPPERS INC.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 3, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

                                            /s/ Cal R. Burnton